[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-10369
_____

D. C. Docket No. 03-00136-CV-11
& BKCY No. 02-13181 BKC-JS

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 23, 2004
THOMAS K. KAHN
CLERK

IN RE:

THOMAS CROW,  JENNIFER CROW,

Debtors.

_____

GEORGIA HIGHER EDUCATION ASSISTANCE CORP.,
GEORGIA STUDENT FINANCE COMMISSION,

Plaintiffs-Appellants,

versus

THOMAS A. CROW,
JENNIFER CROW,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 23, 2004)**

Before ANDERSON and WILSON, Circuit Judges, and JORDAN*, District Judge.

_____
        *Honorable Adalberto Jordan, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

This appeal requires us to apply the Supreme Court's recent decision in

Tennessee Student Assistance Corporation v. Hood, 541 U.S. ___, 124 S. Ct. 1905

(2004), to two claims brought by a debtor in bankruptcy against two agencies of

the State of Georgia.  Although Hood disposes of the first of those claims, it does

not affect the second one.  As to that claim we must decide whether Congress'

attempt in 11 U.S.C. § 106(a) to abrogate states' Eleventh Amendment immunity is

valid. For the reasons that follow, we believe that it is not.

Thomas and Jennifer Crow filed a petition for relief under Chapter 7 of the

United States Bankruptcy Code.  In the course of the proceeding, they filed a

complaint in the bankruptcy court against the Georgia Higher Education Assistance

Corporation and the Georgia Student Finance Commission, two state agencies.

The complaint contained three counts.  Count one sought a determination that

Thomas Crow's outstanding student loan obligations to these two state agencies

were dischargeable.  Count two sought damages from the agencies for their

attempts to collect from the Crows after receiving notice of the Chapter 7 filing.

Count three sought damages from them for their alleged violation of the Fair Debt

Collection Practices Act.

The defendant state agencies filed a motion to dismiss, asserting that the

adversary proceeding was barred by their Eleventh Amendment immunity.  The bankruptcy court granted the motion as to count three, but denied it as to the first two counts after concluding that in 11 U.S.C. § 106(a) Congress had validly abrogated state sovereign immunity as expressed in the Eleventh Amendment.  The agencies appealed the bankruptcy court's denial of their motion to dismiss to the district court, which affirmed.  The agencies then appealed to us, asserting the Eleventh Amendment as a bar to the adversary proceeding.

In the meantime, the Supreme Court issued its decision in Tennessee Student Assistance Corporation v. Hood, 541 U.S. ___, 124 S. Ct. 1905 (2004).  In that case Pamela Hood instituted a Chapter 7 proceeding during which she filed and served a complaint in the bankruptcy court against the Tennessee Student Assistance Corporation, a state agency.  Id. at ___, 124 S. Ct. at 1908-09.  Her complaint sought discharge of her student loans.  Id.  The agency filed a motion to dismiss asserting Eleventh Amendment immunity.  Id. at ___, 124 S. Ct. at 1909.  The motion was denied, and the denial was affirmed by the Sixth Circuit.  319 F.3d 755, 767-68 (6th Cir. 2003).

The Supreme Court affirmed, but it did so without reaching the issue of whether the Bankruptcy Clause of the Constitution authorizes Congress to abrogate the Eleventh Amendment immunity of states.  Instead, the Supreme Court held

3

that, despite the fact that current bankruptcy rules require a debtor to file an "adversary proceeding" against and serve a state agency to discharge student loan debt, such a proceeding does not implicate the Eleventh Amendment. Hood, 541 U.S. at ___, 124 S. Ct. at 1909-15. The Court reasoned that a court's jurisdiction over a discharge of debt in bankruptcy is derived from its jurisdiction over the debtor's property, and that exercise of such in rem jurisdiction does not infringe state sovereignty. Id. at ___, 124 S. Ct. at 1911-13.

Hood is all we need to know in order to resolve the issue involving the denial of the motion to dismiss count one in this case, the count that sought discharge of the debt. Under Hood, the Eleventh Amendment is not implicated, and we therefore affirm the denial of the motion to dismiss that count.

The denial of the motion to dismiss count two, however, raises issues that go beyond the Hood decision. Count two sought a declaration that the defendant state agencies had violated 11 U.S.C. § 362(a) by trying to collect on Crow's debts, and monetary damages pursuant to § 362(h) for that violation. Because count two seeks affirmative relief from the state through a coercive judicial process, the bankruptcy court's jurisdiction over it is premised on the persona of the state, not on the res of the debtor's property. See Hood, 541 U.S. at ___, 124 S. Ct. at 1912. Because jurisdiction is in personam, Eleventh Amendment concerns are not

4

obviated by Hood.  As a result, we must determine whether Congress' attempt in 11 U.S.C. § 106(a) to abrogate Eleventh Amendment immunity in proceedings brought pursuant to § 362 is constitutional.

For reasons we will explain, today we join five of the six circuits that have considered the issue in holding that § 106(a)'s purported abrogation of Eleventh Amendment immunity in bankruptcy proceedings, which is clear and specific, is nonetheless invalid in light of the Supreme Court's decision in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114 (1996).  See Nelson v. La Crosse County Dist. Attorney, 301 F.3d 820, 832 (7th Cir. 2002); Mitchell v. Franchise Tax Bd., 209 F.3d 1111, 1121 (9th Cir. 2000); Sacred Heart Hosp. of Norristown v. Pennsylvania, 133 F.3d 237, 243 (3d Cir. 1998); Dep't of Transp. & Dev. v. PNL Asset Mgmt. Co., 123 F.3d 241, 243 (5th Cir. 1997), amended by 130 F.3d 1138, 1139 (5th Cir. 1997); Schlossberg v. Maryland, 119 F.3d 1140, 1145-47 (4th Cir. 1997).[1]  But see Hood v. Tenn. Student Assistance Corp., 319 F.3d 755, 767-68 (6th Cir. 2003), affirmed on other grounds, 541 U.S. ___, 124 S. Ct. 1905 (2004).  It follows that the federal courts, including the bankruptcy courts, have no authority to entertain a § 362 claim against two agencies of the State of Georgia

---

[1] Though many of those decisions decided this issue in the context of an adversary proceeding to discharge debt – which Hood has since informed us does not implicate the Eleventh Amendment – the reasoning is nonetheless persuasive on the overarching question of whether Congress may abrogate Eleventh Amendment immunity in bankruptcy proceedings.

absent that sovereign's consent, see Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 351 (1945), overruled on other grounds, 535 U.S. 613, 623, 122 S. Ct. 1640, 1646 (2002), and it has not consented.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Under this constitutional provision, a state is immune from suit by private parties in federal court absent a valid abrogation of its immunity by Congress or an express waiver by the state. See, e.g., College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 669-70, 119 S. Ct. 2219, 2223 (1999). Georgia not having waived its rights, the sole issue is whether Congress validly abrogated state sovereign immunity in 11 U.S.C. § 106(a).

Congress successfully abrogates a state's Eleventh Amendment immunity only where two requirements are met. Congress must unequivocally express an intent to abrogate state immunity, and its legislative action must be "pursuant to a valid exercise of power." Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 425-26 (1985). "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" Seminole Tribe, 517 U.S. at 55, 116

6

S. Ct. at 1123. That is no problem in this case. Congress clearly stated its intent to abrogate state sovereign immunity in § 106(a), which provides in relevant part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit" with respect to claims brought pursuant to 11 U.S.C. § 362.

The issue, then, is whether Congress' enactment of § 106(a) was "pursuant to a valid exercise of power." The Crows contend that Congress had the power to abrogate state sovereign immunity in enacting § 106(a) pursuant to its Article I bankruptcy power, under which "Congress shall have power . . . To establish . . . uniform laws on the subject of Bankruptcies throughout the United States . . . ." Art. I., § 8, cl. 4. However, in Seminole Tribe the Supreme Court held that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers. 517 U.S. at 72-73, 116 S. Ct. at 1131-32.

The Crows read Seminole Tribe narrowly, and would restrict the reach of the decision to the Article I powers that were involved in Seminole Tribe itself, which are the ones flowing from the Indian and Interstate Commerce Clauses. Under the Crows' theory those powers are positively less potent for present purposes than Congress' Bankruptcy Clause power, because those other powers do not stem from a source that contains a uniformity requirement as the Bankruptcy Clause does.

7

That theory, however, runs counter to the Supreme Court's sharp statement in

Seminole Tribe that "[t]he Eleventh Amendment restricts the judicial power under

Article III, and Article I cannot be used to circumvent the constitutional limitations

placed upon federal jurisdiction."  517 U.S. at 72-73, 116 S. Ct. at 1131-32.  The

Court did not qualify its emphatic statement that Article I cannot be used to get

around the Eleventh Amendment, and we decline to do so here, because the

Supreme Court has reiterated in a number of cases since then that "Seminole Tribe

makes clear that Congress may not abrogate state sovereign immunity pursuant to

its Article I powers."  Florida Prepaid, 527 U.S. at 636, 119 S. Ct. at 2205; see also

Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364, 121 S. Ct. 955, 962

(2001) ("Congress may not, of course, base its abrogation of the States' Eleventh

Amendment immunity upon the powers enumerated in Article I."); Kimel v. Fla.

Bd. of Regents, 528 U.S. 62, 79, 120 S. Ct. 631, 643 (2000) ("Under our firmly

established precedent then, if the ADEA rests solely on Congress' Article I

commerce power, the private petitioners in today's cases cannot maintain their

suits against their state employers.").

Although Seminole Tribe has closed the Article I abrogation avenue,

Congress may still abrogate Eleventh Amendment immunity pursuant to § 5 of the

Fourteenth Amendment, which provides that "Congress shall have the power to

enforce, by appropriate legislation, the provisions of this article." 517 U.S. at 59, 116 S. Ct. at 1125. The Crows' final argument is that Congress enacted § 106(a) pursuant to § 5 of the Fourteenth Amendment, because bankruptcy is a privilege or immunity under § 1 of the Fourteenth Amendment, meaning Congress could use § 5 to enforce § 1 and in that manner abrogate state sovereign immunity. We disagree.

"Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." Katzenbach v. Morgan, 384 U.S. 641, 651, 86 S. Ct. 1717, 1723-24 (1966). However, Congress may pass only "appropriate" legislation under § 5, and must exercise its power in a "remedial" manner. Florida Prepaid, 527 U.S. at 637-38, 119 S. Ct. at 2206. "Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by [Supreme Court] case law." City of Boerne v. Flores, 521 U.S. 507, 527, 117 S. Ct. 2157, 2167 (1997).

Courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 16, 101 S. Ct. 1531, 1539 (1981). Although it need not "recite the words 'section 5' or 'Fourteenth Amendment'" to enact laws

9

pursuant to § 5, E.E.O.C. v. Wyoming, 460 U.S. 226, 243 n.18, 103 S. Ct. 1054, 1064 n.18 (1983), "to invoke § 5, [Congress] must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct," Florida Prepaid, 527 U.S. at 639, 119 S. Ct. at 2207. In light of this standard, the Crows' § 5 argument fails on three separate grounds.

First, Congress gave no indication that it enacted § 106(a) pursuant to anything other than its Article I bankruptcy power. See Sacred Heart, 133 F.3d at 244; PNL Asset Mgmt., 123 F.3d at 245; Schlossberg, 119 F.3d at 1146. As the Third Circuit put it:

> [T]he conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800 – 68 years before the passage of the Fourteenth Amendment. We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

Schlossberg, 119 F.3d at 1146 (internal citation omitted).

Second, even if Congress had purported to pass § 106(a) pursuant to its § 5 power, it could not validly do so because conferring a statutory right to bankruptcy does not enforce the Privileges & Immunities Clause of the Fourteenth

10

Amendment. The Supreme Court has expressly held that there is no constitutional right to a bankruptcy discharge, United States v. Kras, 409 U.S. 434, 446-47, 93 S. Ct. 631, 638-39 (1973), and § 5 does not authorize Congress to create new constitutional rights, Downing v. Bd. of Tr. of Univ. of Ala., 321 F.3d 1017, 1021 (11th Cir. 2003). It follows that Congress could not legislatively elevate bankruptcy to the constitutional status of a privilege or immunity. In addition, bankruptcy bears no resemblance to any of the rights the Supreme Court has defined as privileges and immunities, see Twining v. New Jersey, 211 U.S. 78, 97, 29 S. Ct. 14, 19 (1908) (enumerating the rights protected by the privileges and immunities clause), and in any event only one of those rights, the right to travel, has been used to strike down a law in the last 70 years. See Saenz v. Roe, 526 U.S. 489, 511, 119 S. Ct. 1518, 1530 (1999) (Rehnquist, J., dissenting).

If bankruptcy, a statutorily-conferred, non-constitutional right, were deemed a privilege or immunity, any statutory right Congress created would be a privilege or immunity, and Congress could use any exercise of Article I power to abrogate state sovereign immunity by claiming to act under § 5 of the Fourteenth Amendment. This would fly in the face of Seminole Tribe. See Sacred Heart, 133 F.3d at 244-45 (rejecting contention that bankruptcy is a privilege or immunity); see also Schlossberg, 119 F.3d at 1146-47 ("If the Fourteenth Amendment is held

11

to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment."); Mitchell, 209 F.3d at 1119 (rejecting a theory that § 106(a) could have validly abrogated sovereign immunity under the Due Process Clause of the Fourteenth Amendment); PNL Asset Mgmt., 123 F.3d at 245 (to allow Congress to abrogate sovereign immunity by determining that § 106(a) was passed pursuant to § 5 would "render Eleventh Amendment state sovereign immunity meaningless and eviscerate the fundamental construct of federalism in our constitutional form of government").

Finally, even if Congress had purported to act under § 5 of the Fourteenth Amendment, and even if Congress otherwise could have done so, in enacting § 106(a) of the Bankruptcy Code Congress did not identify any pattern of state conduct violating bankruptcy law or any provision of the Fourteenth Amendment, as required by the Supreme Court in Florida Prepaid, 527 U.S. at 640, 119 S. Ct. at 2207. See H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; H.R. Rep. No. 103-835, at 42 (1994); see also Mitchell, 209 F.3d at 1119-20. It follows that the enactment of § 106(a) was not remedial in the requisite sense and was not an appropriate exercise of its § 5 powers. See Florida Prepaid, 527 U.S. at

12

637-38, 119 S. Ct. at 2206; see also City of Boerne, 521 U.S. at 519, 117 S. Ct. at 2163-64. As a result, § 106(a) did not validly abrogate the Eleventh Amendment.

Because Congress may not abrogate state sovereign immunity pursuant to its Article I Bankruptcy Clause powers, and because § 106(a) was not validly enacted pursuant to its powers under § 5 of the Fourteenth Amendment, Congress' attempt to take from states in in personam bankruptcy cases the protection that the Eleventh Amendment provides them is invalid. For that reason, the bankruptcy court and the district court should have granted the motion to dismiss filed by the state agencies as to count two in this case. See Ford, 323 U.S. at 464, 65 S. Ct. at 351.

The judgment of the district court as to count one is AFFIRMED. Its judgment as to count two is VACATED, and the case is REMANDED with instructions for the district court to vacate the judgment of the bankruptcy court as to count two, which is due to be dismissed.