BLACK, Circuit Judge,
concurring in part and dissenting in part:
I agree with all portions of the Court’s opinion except Section F. I respectfully dissent because I conclude 11 U.S.C. § 106(a)(3) does not apply to limit the bankruptcy court’s award. Section 106(a)(3) would apply only if the bankruptcy court entered judgment pursuant to the statutory abrogation of state sovereign immunity embodied in § 106(a). In this case, we do not rely on § 106(a) to affirm the judgment against the Florida DOR. Instead, we rely on the states’ consent to subordinate their sovereign immunity at the plan of convention and, alternatively, on Florida’s waiver of sovereign immunity by filing a proof of claim. In either case, the limitations in § 106(a)(3) that the 1994 Congress enacted as part of its statutory *1321 abrogation scheme in § 106(a)(1) through (a)(4) do not apply.
A. Abrogation of State Sovereign Immunity
State sovereign immunity, a concept embodied in the Eleventh Amendment, is an immunity from suit. See Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). However, there are certain well-established situations in which states are amenable to suit. First, Congress may abrogate state sovereign immunity if it unequivocally expresses an intent to abrogate state immunity and acts pursuant to a valid exercise of power. Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985). Second, a state may waive its sovereign immunity by consenting to suit in federal court, either expressly or in the “plan of the convention.” Blatchford, 501 U.S. at 779, 111 S.Ct. at 2581.
In 11 U.S.C. § 106(a), Congress purported to abrogate state sovereign immunity, to a limited extent, in proceedings brought under certain enumerated sections of the Bankruptcy Code. See 11 U.S.C. § 106(a)(1)-(4). Subsections (a)(1) through (a)(4) together establish Congress’s abrogation scheme, with each subsection adding an additional, necessary component to the scheme.[1] Subsection (a)(1) lists the specific sections of the Bankruptcy Code to which the abrogation scheme applies. Subsection (a)(2) abrogates sovereign immunity so as to allow a bankruptcy court to hear and determine any issue in proceedings applying the enumerated sections to governmental units. Subsection (a)(3) abrogates sovereign immunity so as to allow a bankruptcy court to issue an order or judgment against a governmental unit, including a state agency, in such proceedings. Although subsection (a)(3) permits a bankruptcy court to issue an order awarding a money recovery, the subsection also contains two limitations: first, it does not permit an award of punitive damages and second, if the order or judgment is for costs and fees, it requires that the order be consistent with the provisions and limitations of 28 U.S.C. § 2412(d)(2)(A). Finally, subsection (a)(4) abrogates sovereign immunity so as to allow a bankruptcy court to enforce any such order or judgment it issues against a governmental unit. As a whole, subsections (a)(1) through (a)(4) comprise Congress’s statutory abrogation scheme.
*1322 When Congress enacted § 106(a) in 1994, the common perception was that Congress could validly abrogate state sovereign immunity pursuant to its enumerated powers under Article I of the Constitution. See Pennsylvania v. Union Gas Co., 491 U.S. 1, 14-19, 109 S.Ct. 2273, 2281-84, 105 L.Ed.2d 1 (1989) (holding Congress may abrogate state sovereign immunity when legislating pursuant to its Commerce Clause power under Article I of the Constitution as long as it clearly expresses its intent to do so). This perception of Congress’s Article I powers changed in 1996 when the Supreme Court overruled Union Gas. In Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court held that Congress could not abrogate state sovereign immunity pursuant to its Article I powers, but only pursuant to § 5 of the Fourteenth Amendment. Id. at 45, 116 S.Ct. at 1118. While the Supreme Court did not address § 106(a) in Seminole Tribe, its holding implicitly rendered § 106(a) an unconstitutional abrogation of sovereign immunity because Congress enacted § 106(a) pursuant to its Article I bankruptcy power. See In re Crow, 394 F.3d 918, 923 (11th Cir.2004). In 2004, this Court addressed the constitutionality of § 106(a) in In re Crow and held that, in light of Seminole Tribe, Congress’s attempt to abrogate state sovereign immunity in in personam bankruptcy cases was invalid. Id. at 921, 924.
In 2006, when presented with an opportunity to address whether § 106(a) was a valid abrogation of state sovereign immunity, the Supreme Court did not answer the question. See Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 126 S.Ct. 990, 995, 163 L.Ed.2d 945 (2006). Instead, the Supreme Court held § 106(a) was “not necessary” to authorize a suit against a state in certain bankruptcy proceedings. See id. at 995, 1000-05 (holding Congress’s attempted abrogation of sovereign immunity in § 106(a) was unnecessary to authorize a bankruptcy court’s in personam jurisdiction over ancillary orders necessary to effectuate its in rem jurisdiction). The Court explained that the statutory abrogation was unnecessary because the “States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to ‘Laws on the subject of Bankruptcies.’ ” Id. at 1004.
Consequently, after Katz, the entire statutory scheme in § 106(a)(1) through (a)(4) is unnecessary and inapplicable to suits against a state in proceedings necessary to effectuate a bankruptcy court’s in rem jurisdiction. In particular, Katz renders § 106(a)(3), which abrogates state sovereign immunity so as to allow a bankruptcy court to issue an order against a state with some limitations, unnecessary and inapplicable in such bankruptcy proceedings. Section 106(a)(3) has nothing to abrogate or limit because, according to Katz, bankruptcy courts have always had the power to enter a money judgment against states in such proceedings.
After Katz, any other interpretation of § 106(a) is unpersuasive. For instance, if § 106(a)(1) is sufficient in and of itself to abrogate sovereign immunity (without regard to § 106(a)(2)-(a)(4)), it would render § 106(a)(2), the first sentence of § 106(a)(3), and § 106(a)(4) meaningless. Section 106(a)(2), which permits a bankruptcy court to hear and determine issues against a state, would have no purpose because a state would already be amenable to suit pursuant to § 106(a)(l)’s “abrogation” of sovereign immunity. Likewise, the first sentence of § 106(a)(3), which permits a bankruptcy court to issue money judgments against a state, would also have no purpose because the states would already be amenable to money judgments pursuant to § 106(a)(l)’s “abrogation.” *1323 Finally, § 106(a)(4), which permits a bankruptcy court to enforce a judgment against a state, would also have no purpose because a state would be amenable to enforcement pursuant to § 106(a)(l)’s “abrogation.” Section 106(a) only has meaning if it is read as a statutory scheme of abrogation, effected through subsections 106(a)(1), (a)(2), (a)(3), and (a)(4). Thus, after Katz, § 106(a), in its entirety, is inapplicable because there is no sovereign immunity for its subsections to abrogate.
Therefore, a plain reading[2] of the statutory scheme indicates that any limitations in subsections (a)(1) through (a)(4) — such as those in subsection (a)(3) regarding punitive damages and attorney’s fees — apply to an award against a governmental unit only where the statutory abrogation of state sovereign immunity created the bankruptcy court’s jurisdiction to enter the award. It is ultimately irrelevant whether, in enacting § 106(a)(3), the 1994 Congress actually intended that the limitations in subsection (a)(3) apply to all awards issued against a state, and not only awards issued pursuant to the statutory abrogation scheme in § 106(a)(1) through (a)(4). The fact remains that the 1994 Congress specifically placed the limitations in the text of § 106(a), and the limitations appear nowhere else in the Bankruptcy Code. Of course, Congress may now exercise its plenary power over the uniform laws of bankruptcy to limit all awards against a state in bankruptcy proceedings, but it has yet to do so.
In the instant case, the limitation in § 106(a)(3) does not apply to the bankruptcy court’s award because, as the majority explains, § 106(a)’s statutory abrogation of sovereign immunity did not create the bankruptcy court’s jurisdiction to issue a judgment against the Florida DOR. Therefore, I would affirm the bankruptcy court’s award of punitive damages and its determination of attorney’s fees.
B. Waiver of State Sovereign Immunity
The majority also held the Florida DOR waived its sovereign immunity in this case by filing a proof of claim. Even if we affirmed the judgment against the Florida DOR based' on its waiver of sovereign immunity, rather than on Katz, I would likewise affirm the bankruptcy court’s award of punitive damages and determination of attorney’s fees.
Where a state waives sovereign immunity by filing a proof of claim, the scope of the waiver is limited to the adjudication of that claim. In Re Burke, 146 F.3d 1313, 1319 (11th Cir.1998). Our case law has not provided any limitations on an award issued against a state where the state has waived sovereign immunity by filing a proof of claim. The claim in this case was the Florida DOR’s violation of the automatic stay. “[A]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and, attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.” 11 U.S.C. § 362(h) (now *1324 § 362(k)(l)) (emphasis added). Further, the bankruptcy court entered its order pursuant to 11 U.S.C. § 105(a), which grants the court power to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” Section 105 does not contain limitations on an award of punitive damages or attorney’s fees. Therefore, even if we relied on the Florida DOR’s waiver of sovereign immunity to affirm the judgment against it, there are no limitations on the bankruptcy court’s award of punitive damages and determination of attorney’s fees.[3]
For the foregoing reasons, I respectfully dissent in Section F of the majority opinion, and I concur in all other respects.

. The relevant text of § 106(a) is as follows:
(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
(1) Sections 105, 106, ... 362,....
(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

. The majority suggests that by reading the statute as a whole, I give it a “contextual reading” and ignore the plain meaning of § 106(a)(3). I admit, unlike the majority, I do not read the second sentence of § 106(a)(3) in isolation. Instead, I consider a plain reading of subsection (a)(3) to include consideration of the entire statute. In so doing, I follow the guidance of the Supreme Court. See King v. St. Vincent's Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[W]e do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole ... since the meaning of statutory language, plain or not, depends on context.”). My interpretation, therefore, is informed by the plain meaning of the text in relation to the statute as a whole or, in other words, by its context.

. I note that the cases the majority cites for this issue, Jove Eng’g, Inc. v. I.R.S., 92 F.3d 1539 (11th Cir.1996), In re Washington, 184 B.R. 172 (S.D.Ga.1995), and In re Flynn, 185 B.R. 89 (S.D.Ga.1995), have limited persuasive value. In these cases, debtors sought relief against the Internal Revenue Service, a federal "governmental unit,” and the courts specifically relied on 11 U.S.C. § 106 to find a waiver of federal sovereign immunity. By contrast, the instant case deals with the waiver of state sovereign immunity pursuant to In Re Burke, 146 F.3d 1313, 1319 (11th Cir.1998). We specifically do not rely on § 106 to find a waiver of state sovereign immunity. Because this case does not require I answer the question, I express no opinion on whether the limitations in the Equal Access to Justice Act apply to federal waivers of sovereign immunity pursuant to § 106.