[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11655

_____

D. C. Docket Nos. 05-01633-CV-ORL-31-DAB & 01-03306-BKC-KS

IN RE:

Gregg Takafumi Omine,

Debtor.

_____

IN RE:

Michelle Lynn Omine,

Debtor.

_____

FLORIDA DEPARTMENT OF REVENUE,

Plaintiff-Appellant,

versus

GREGG TAKEFUMI OMINE,
MICHELE LYNN OMINE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(May 11, 2007)**

Before BIRCH and BLACK, Circuit Judges, and MILLS,[*] District Judge.

BIRCH, Circuit Judge:

The Florida Department of Revenue ("the Florida DOR") appeals the district court's order affirming an order of the bankruptcy court awarding damages after a determination that the Florida DOR violated the automatic stay. We consider whether the district court erred in upholding the bankruptcy court's discharge of the support obligation, affirming the bankruptcy court's holding that the Florida DOR violated the automatic stay, and ordering damages. We AFFIRM the district court's determination that the Florida DOR could not assert sovereign immunity, REVERSE and VACATE the award of damages, and REMAND to the district court for proceedings consistent with this opinion.

---

[*] Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

# I. BACKGROUND

Gregg and Michele Omine filed for Chapter 13 bankruptcy protection in 2001. The Florida DOR then filed a proof of claim seeking to recover public assistance money Hawaii paid to Gregg Omine's former wife and children, who resided there. This Hawaii debt was included among those to be paid in the Omines' Chapter 13 plan. The Omines filed a motion for contempt and sanctions, contending that the Florida DOR had continued debt-collection efforts after the filing of the bankruptcy petition, in violation of the automatic stay. The Omines withdrew the motion in January 2002 after the Florida DOR assured them that no further actions would be taken against them, but that assurance proved illusory.

The following year, Gregg Omine's employer received a letter from the Florida DOR directing the employer to garnish Omine's wages in connection with the Hawaii debt.[1] After counsel for both sides conferred, the Florida DOR agreed to cease this garnishment, but then, a week later, Omine received a letter threatening him with various penalties if he failed to pay the Hawaii debt. Again, after the parties' counsel conferred, the collection efforts were halted, albeit only temporarily.

---

[1] References to "Omine" refer to Gregg Omine, whose income the Florida DOR attempted to garnish post-confirmation, whereas references to "the Omines" refer to the debtors, Gregg and Michele, collectively.

3

The Florida DOR soon directed Omine's employer to begin garnishing Omine's wages again to pay the Hawaii debt, and counsel for each side again conferred and resolved to halt the collection effort. A few days later the Omines received a notice that their 2002 tax refund had been offset against the Hawaii debt. The Omines then filed a motion for sanctions that alleged the Florida DOR repeatedly violated the automatic stay.

The bankruptcy court found that the Florida DOR had willfully violated the automatic stay by directing Omine's employer to begin garnishing his wages on two separate occasions and by sending the Omines the collection notice. The bankruptcy judge discharged the remainder of the Hawaii debt and awarded the Omines $1,000 in actual damages, plus $1,600 in attorney's fees and costs.

The Florida DOR appealed, arguing that the bankruptcy judge erred in holding that the Florida DOR's actions violated the automatic stay, by awarding attorney's fees without sufficient evidentiary support, and by awarding punitive damages against a governmental unit. The Florida DOR asserted that Omine's post-petition income was not property of the estate; that sending debt-collection letters was not an action against estate property; that 11 U.S.C. § 362(b)(2) created an exception permitting the Florida DOR to collect a support obligation; and that

the collection efforts resulted from computer glitches and were therefore not willful.

On 3 November 2003, the district court found that the Florida DOR violated the automatic stay and the damages were actual, not punitive. The court, however, vacated the attorney's fees award and remanded to the bankruptcy court to provide an evidentiary basis for it. The district court also remanded the case to the bankruptcy court for the determination as to whether the debt was in the nature of support, and therefore nondischargeable. The district court considered the Florida DOR's "property of the estate" argument, but found that "Omine's income, which the [Florida DOR] attempted to garnish post-confirmation, is essential to the Debtors' ability to make plan payments and therefore is estate property to which the [Florida DOR] is not entitled." R1, 2-4 at 6.

The Florida DOR appealed the 2003 order, and we affirmed the district court's order in a 2004 unpublished opinion. We declined to address the Florida DOR's "property of the estate" argument, finding that it was not raised before the bankruptcy court, but otherwise affirmed the district court's order finding that the Florida DOR violated the automatic stay and remanding the case to the bankruptcy court.

5

Before the bankruptcy court decided the remanded issues, the Omines filed new motions for sanctions on additional alleged violations of the automatic stay for conduct similar to the Florida DOR's earlier transgressions. Specifically, the Omines alleged that the Florida DOR had sent another notice of past-due support to the Omines in August 2003 and another collection letter in October 2004 regarding the Hawaii debt. With new motions filed against the Florida DOR at the bankruptcy court level, the Florida DOR raised many of the same issues it raised regarding the first collection letters, including the "property of the estate" argument, which we held was not raised properly the last time the parties were at the bankruptcy court. The bankruptcy court addressed both the remanded issues and the new motions in the same 2005 order.

The 2005 bankruptcy court order awarded $12,740 in fees and $175.45 in costs. The bankruptcy court also concluded that the Hawaii debt was "*not* in the nature of support and, therefore, [was] dischargeable." R1, 1-3 at 2. The order then addressed the two additional new motions for sanctions that alleged that the Florida DOR had sent a notice of past-due support to the Omines and a collection letter. The bankruptcy court found that both letters constituted willful violations of the automatic stay and awarded $1045.12 in actual damages, $2,000 in sanctions, and $885 in attorney's fees. The bankruptcy court disposed of the Florida DOR's

"property of the estate" argument by agreeing with the district court's analysis in its 2003 order.

The Florida DOR again appealed to the district court. Regarding dischargeability, the district court held that the pertinent issue was whether, under federal law, the Hawaii debt was in the nature of support, not whether Hawaii's state laws consider it as such. Based on the lack of evidence provided by the Florida DOR that the Hawaii debt was in the nature of support and Omine's testimony that the Hawaii debt was not in the nature of support, the district court affirmed the bankruptcy court's determination that the Hawaii debt was not in the nature of support and was therefore dischargeable.

The district court also held, pursuant to the Supreme Court's decision in Central Virginia Community College v. Katz, 546 U.S. 356, 126 S. Ct. 990 (2006), that actions to force a creditor to honor the automatic stay are the types of proceedings necessary to effectuate the Court's in rem jurisdiction and, therefore, the Florida DOR could not assert sovereign immunity. The district court then turned to the Florida DOR's challenge to the bankruptcy court's failure to apply the limitations set forth in 11 U.S.C. § 106(a)(3), which prohibits punitive damages and limits attorney's fees and costs. The district court noted that we held that § 106(a) was an unconstitutional attempt to abrogate state sovereign immunity in In

re Crow, 394 F.3d 918, 921-24 (11th Cir. 2004) (per curiam). The district court then held that even if § 106(a)(3) were viable after In re Crow, Congress would not have intended it to be applicable in a case such as this–where the Florida DOR filed a proof of claim, waiving sovereign immunity–as opposed to situations where the government was dragged into court via abrogation of their sovereign immunity.

Finally, the court rejected the Florida DOR's argument that the bankruptcy court erred by failing to find that the Florida DOR's debt collection efforts met the requirements for the exception in 11 U.S.C. § 362(b)(2)(B), which states that the automatic stay does not bar the collection of a domestic support obligation from property that is not property of the estate. The Florida DOR asserted that upon the filing of the Omines' petition, all Omine's future earnings and other assets became property of the estate, but upon confirmation of the Chapter 13 plan all assets beyond the amounts needed to make the plan payments re-vested in Omine. The district court rejected this argument, reasoning that the Hawaii debt was not in the nature of support, but then went on to conclude that the Florida DOR's "property of the estate" argument was meritless because the collection letters were not limited as to their target. In other words, the notice of past-due support that the Florida DOR sent threatened Omine with repercussions if he did not pay the entire Hawaii debt, not just whatever fraction might be payable from assets not

8

committed to the plan. Also, because the claim against the Florida DOR arose out of its efforts to collect on the debt under its proof of claim, the district court agreed with the bankruptcy court's finding that this claim satisfied the "same transaction or occurrence" language of § 106(b). As a result, the district court affirmed the bankruptcy court's order. This appeal followed.

## II. DISCUSSION

### A. Standard of review

We review issues presenting a question of law de novo. See In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989). Any error as to a finding of fact is reviewed using a clearly erroneous standard. Id.

### B. Res Judicata

As detailed in the background sections, the parties have litigated earlier violations of the automatic stay previously, culminating in our 2004 opinion that affirmed the district court's order upholding the bankruptcy court's determination that actions by the Florida DOR violated the automatic stay. The case is now before us, in part, on an appeal from the bankruptcy court's determination that additional similar actions by the Florida DOR taken while the first case was on appeal also constitute a violation of the automatic stay, and, in part, on an appeal of the issues originally remanded to the bankruptcy court from the first case.

A party seeking to invoke the doctrine of res judicata must establish its propriety by satisfying four initial elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). The Omines assert that the district court noted that the Florida DOR argued in its first appeal to the district court that it did not seek collection from property of the estate but we declined to hear that argument, stating that it had not been raised before the bankruptcy court. Although in our 2004 opinion we affirmed the Florida DOR's violation of the automatic stay regarding the letters at issue in the Omines' initial motion for sanctions, the parties are now before us from an appeal of not only the remanded issues, but also an appeal of two subsequent motions for sanctions filed against the Florida DOR for additional collection actions that the bankruptcy court held also violated the automatic stay.

"Under res judicata . . . a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." Id. Here, however, the new motions for sanctions could not have been raised in the first case because the transgressions complained of by the

10

Omines in the new motions for sanctions had not yet occurred. See Apotex, Inc. v. FDA, 393 F.3d 210, 218 (D.C. Cir. 2004) ("Res judicata does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit.").[2] Since the factual allegations underlying the two additional motions for sanctions are distinct allegations of new violations of the automatic stay, both cases do not involve "the same causes of action." See In re Piper, 244 F.3d at 1296.

C. Subordination of Sovereign Immunity

Both parties attempt to define the contours of the Supreme Court's Katz decision, issued only days before the district court's hearing. In Katz, the trustee commenced proceedings in bankruptcy court to recover alleged preferential transfers made to several institutions of higher education prior to the debtor's bankruptcy filing. 546 U.S. at 356, 126 S. Ct. at 994-95. The institutions of higher education filed motions to dismiss, claiming sovereign immunity. Id. at ___, 126 S. Ct. at 995. The Supreme Court granted certiorari to consider "whether Congress' attempt to abrogate state sovereign immunity in 11 U.S.C. § 106(a) is

---

[2] Although referenced in oral argument, the Omines failed to brief, and therefore waived, whether collateral estoppel could still bar our review of whether the automatic stay was violated. See Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003) (deeming waived an argument made only in "passing reference" and not argued on the merits).

11

valid." Id. (footnote omitted). Instead, the Court recast the issue and stated that "[t]he relevant question is not whether Congress has 'abrogated' States' immunity in proceedings to recover preferential transfers. See 11 U.S.C. § 106(a). The question, rather, is whether Congress's determination that States should be amenable to such proceedings is within the scope of its power [under the Bankruptcy Clause]." Id. at ___, 126 S. Ct. at 1005 (footnote omitted). The Supreme Court concluded that Congress's determination is within such power, explaining "that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" Id. at ___, 126 S. Ct. at 1004. In other words, Congress's power, "either [to] treat States in the same way as other creditors . . . or exempt them from [the] operation of [bankruptcy] laws . . . arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute." Id. at ___, 126 S. Ct. at 1005.

Katz held that 11 U.S.C. § 106(a)'s statutory abrogation of state sovereign immunity was unnecessary to authorize the Bankruptcy Court's jurisdiction over the preference avoidance proceedings at issue, and recognized that historically courts adjudicating disputes concerning bankrupts' estates had the power to issue ancillary orders to enforce its in rem jurisdiction, including granting in personam

12

relief.  Id. at ___, 126 S. Ct. at 995, 1000-01.  While the Supreme Court clarified that it did "not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity," it did not delineate, other than authorizing the Bankruptcy Court's jurisdiction over the preference avoidance proceedings at issue in Katz, where or how that line would be drawn.  Id. at ___ n.10, 126 S. Ct. at 1005 n.10.  The action by the bankruptcy court in this case now launches us into the remaining gray area as to what power provided by the bankruptcy code cannot be used against the State.

The Florida DOR argues that Katz recognized a waiver of sovereign immunity limited to core bankruptcy issues, including the determination of discharge and the marshaling of estate assets, but did not extend to allow public funds held by a state treasury to be at risk to benefit an individual.  The Omines essentially argue that Katz's "ancillary order" theory is broad enough to preclude the Florida DOR from asserting immunity as a defense to any proceeding grounded on a provision of the Bankruptcy Code or that affects property of the debtor estate.  See id. at ___, 126 S. Ct. at 1000.

Courts have long recognized that "[t]he automatic stay is fundamental to the reorganization process . . . ."  Small Bus. Admin. v. Rinehart, 887 F.2d 165, 168

13

(8th Cir. 1989) (citations omitted). Basic bankruptcy doctrine posits that a bankruptcy court's actions in protecting the automatic stay stems from the need to prevent abusive debt-collection practices. The bankruptcy processes of proof, allowance, and distribution are all fundamentally about the adjudication of interests claimed in a res and are all inextricably intertwined. As the Katz court acknowledged, "[c]ritical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' . . . ." 546 U.S. at ___, 126 S. Ct. at 996. Katz made clear that, "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Id., 126 S. Ct. at 1005. A bankruptcy court's authority to issue compulsory orders to facilitate the administration and distribution of the res flows from that jurisdiction and, as such, does not implicate a State's sovereignty in the same way as other kinds of jurisdiction, even where the orders take the form of money damage awards against a State. While motions for contempt and seeking sanctions that include attorney's fees and costs for violating the automatic stay may resemble money damage lawsuits in *form*, it is their *function* that is critical, and their *function* is to

14

facilitate the in rem proceedings that form the foundation of bankruptcy. See In re

Burke, 146 F.3d 1313, 1319 (11th Cir. 1998) ("We conclude that the substance of

the Headricks' action [alleging that the Georgia Department of Revenue violated

the discharge injunction by sending a demand letter for unpaid state income taxes]

is a motion to enforce the bankruptcy court's automatic stay order.").

As a result, we agree with the district court that, pursuant to Katz, actions to

force a creditor to honor the automatic stay are the types of "proceedings necessary

to effectuate the in rem jurisdiction of the bankruptcy court[]," and that, therefore,

the Florida DOR may not assert sovereign immunity here. See 546 U.S. at ___,

126 S. Ct. at 1005. And while the Florida DOR insists that the Katz decision

should be read narrowly, the Court's broad language makes clear that "the

jurisdiction of courts adjudicating rights in the bankrupt estate include[s] the power

to issue compulsory orders to facilitate the administration and distribution of the

res." Id. at ___, 126 S. Ct. at 996. In fact, in holding that the States could not

assert their sovereign immunity to defeat preference recovery proceedings, the

Court in Katz did not limit its decision by singling out any other specific types of

ancillary bankruptcy proceedings that remain subject to the States' Eleventh

Amendment immunity.[3] We hold that the bankruptcy court's ancillary order to

---

[3] Black's Law Dictionary defines "ancillary" as "supplementary." See Richard Loeb,
State Sovereign Immunity: Bankruptcy Is Special, 14 AM. BANKR. INST. L. REV. 201, 230-31

15

enforce an automatic stay, which is one of the fundamental debtor protections provided by the bankruptcy laws, operates free and clear of the Florida DOR's claim of sovereign immunity.

It is well settled that a panel of this court may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent. United States v. Dennis, 786 F.2d 1029, 1049 (11th Cir. 1986). As a result of the Supreme Court's opinion in Katz, it is necessary to point out that our pre-Katz reasoning of In re Crow, 394 F.3d at 922, invalidating § 106(a), in part, on the basis that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers, is no longer good law. See 546 U.S. at ___, 126 S. Ct. at 996 (acknowledging that statements in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72, 116 S. Ct. 1114, 1132 (1996), reflected an erroneous assumption that its holding that "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction," would apply to the Bankruptcy Clause).

Moreover, as we shall discuss, even without Katz's pronouncement regarding state abrogation of sovereign immunity under the Bankruptcy Clause, the

(2006) (discussing the broad scope of Katz).

Florida DOR filed a proof of claim in this case, which raises issues of waiver of sovereign immunity.[4]

D.  Waiver of Sovereign Immunity

"[B]y filing a proof of claim in [a] debtors' . . . bankruptcy proceedings, [a] State waive[s] its sovereign immunity for purposes of the adjudication of those claims."  In re Burke, 146 F.3d 1313, 1319 (11th Cir. 1998).  A State's waiver of sovereign immunity must be express and unequivocal, and generally courts have set out three elements to analyze in determining if the State waived sovereign immunity by participating in the bankruptcy case.  In re Straight, 143 F.3d 1387, 1390 (10th Cir. 1998).  The first element limits the waiver to cases where a governmental unit files a proof of claim.  Id.  The second element requires that the claim against the governmental unit must be property of the estate.  Id.  The third element requires that the claim arises out of the same transaction or occurrence.  Id.

---

[4] In resolving the issues in this case, we find it necessary to address arguments regarding both the Florida DOR's subordination and waiver of sovereign immunity.  First, in Katz, one party, the Virginia Military Institute ("VMI"), like the Florida DOR, also filed proof of claim.  Respondent Katz made this point in his response to the Petitioner's writ for certiorari when urging the Court to deny certiorari on the basis that "Virginia's sovereign immunity in this bankruptcy case has been waived, and . . . [t]hus, this case does not present the question on which Petitioners seek certiorari.  Whether Congress can abrogate Virginia's immunity is not at issue because that immunity has been waived here."  Respondent's Brief in Opposition at 4, Katz, 546 U.S. 346, 126 S. Ct. 990; see also Transcript of Oral Argument at 23 (discussing VMI's waiver).  Despite the proof of claim filed on behalf of one of the petitioners in the Katz case, the Supreme Court still granted certiorari and answered the question of abrogation under the Bankruptcy Clause.  Second, we find it necessary to undertake an analysis of the Katz case because of its implications for our caselaw regarding § 106(a), which the parties put in dispute regarding the limitations set forth in subsection (a)(3).

The parties agree that the first element, the governmental unit filing a proof of claim, has been met. The parties disagree as to the second and third elements.

The second element requires us to determine whether the claim against the Florida DOR is property of the estate. The Florida DOR argues that any waiver of sovereign immunity recognized by the filing of a proof of claim is limited to actions related to the claim held by the bankruptcy estate and does not extend to the instant action brought by the debtor. It asserts that upon confirmation of the Chapter 13 plan, all assets beyond the amounts needed to make the plan payments were not property of the estate because they had re-vested in the debtor, and, therefore, it did not violate the automatic stay by seeking to garnish those wages.

The automatic stay does not bar "collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). "[P]roperty necessary for the execution of the plan . . . remain[s] property of the estate" upon confirmation of a Chapter 13 plan. Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1340 (11th Cir. 2000) (adopting the "estate transformation approach"). The Florida DOR's letters at issue were not limited as to their target, that is, the letters sought collection as to Omine's post-petition earnings, not just whatever fraction of Omine's income that might be payable from assets not

18

committed to the plan. Accordingly, we agree that Omine's income is essential to the Omines' ability to make plan payments and therefore is estate property.

The third element requires that the claim arise out of the same transaction or occurrence. The district court agreed with the bankruptcy court that because the claim against the Florida DOR arose out of the Florida DOR's efforts to collect on the debt underlying its proof of claim, the "same transaction or occurrence" requirement was met. Our ruling in In re Burke supports this determination and, as a result, the district court's conclusion was proper. See 146 F.3d at 1318 n.10 (concluding "that the debtors' actions for violation of the automatic stay and discharge injunction 'arise out of the same transaction or occurrence' as the State's proofs of claim").

E. Violation of the Automatic Stay

The Florida DOR's remaining argument regarding the district court's affirmance of the bankruptcy court's determination that the Florida DOR violated the automatic stay is that the district court improperly shifted the burden of showing a violation of the automatic stay to the creditor, instead of the debtor. Multiple bankruptcy courts have held that the "[p]laintiff [/debtor] bears the burden of providing that she is entitled to damages under section 362(h)." See, e.g., In re Lord, 270 B.R. 787, 794 (Bkrtcy. M.D. Ga. 1998) (citing similar holdings). The

Florida DOR argues that the district court improperly shifted the burden from the debtor to the Florida DOR in holding that the Florida "DOR failed to show that its actions were taken against property that was not property of the estate." R1, 23 at 12.

While the wording of the district court's second order appears to suggest the burden was improperly shifted, in its first order in the prior case–undertaking an analysis of the Florida DOR's identical "property of the estate" argument–the district court concluded, without any improper shifting of the burden, that "Omine's income, which the D.O.R. attempted to garnish post-confirmation, is essential to the Debtors' ability to make plan payments and therefore is estate property to which the D.O.R. is not entitled." R1, 2-4 at 5-6. Furthermore, the bankruptcy court, without improperly shifting the burden, concluded that the Florida DOR violated the automatic stay when it found that the "[d]ebtors' income is considered essential to their ability to make plan payments and, therefore, remains estate property." R1, 1-3 at 8 (citing Telfair, 216 F.3d at 1340). We agree with the bankruptcy court's analysis, and, therefore, affirm the district court's ultimate holding based on the correct analysis used by the bankruptcy court.

F.  Award Limitations in 11 U.S.C. § 106(a)(3)

The Florida DOR also asserts that the limitations found in § 106(a)(3) should apply to the bankruptcy court's order awarding a money recovery and that the district court ignored the plain language of the statute. The relevant text of 11 U.S.C. § 106(a) states:

> Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106 . . . 362 . . . of this title.
> . . .
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28 [defining 'fees and other expenses' under the Equal Access to Justice Act ("EAJA")].

The bankruptcy court found that the provisions and limitations of EAJA referenced in § 106(a)(3) apply only in circumstances of forced abrogation of sovereign immunity protection, not in situations such as this, wherein the state agency consents to the bankruptcy court's jurisdiction through the filing of a proof of claim as detailed in § 106(b). The bankruptcy court reasoned that "[i]f Congress had intended the limitation of the EAJA to apply to other sections of the Bankruptcy Code, it would not have placed the reference to the EAJA solely under

21

Section 106(a) . . . . No limitations imposed by the EAJA are extended to . . . [the] Florida DOR, by Section 106(b). Therefore, the Court must follow the normal rules in awarding fees and costs." R1, 1-3 at 5. The district court largely agreed, adding that it was persuaded by the structure and history of the section that Congress intended for governments that filed proofs of claim to be treated like ordinary creditors in regard to those claims, as they had been prior to the restrictions added in the current § 106(a).

We agree with the Florida DOR that based on the plain text of 11 U.S.C. § 106(a)(3), the award limitations found in § 106(a)(3) are applicable in this case. Section 106(a)(3) clearly states that "[t]he court may issue against a governmental unit an order . . . under such sections." The phrase "such sections" in § 106(a)(3) unambiguously refers to the list of sections in § 106(a)(1), which includes an order pursuant to § 362, the section that addresses the automatic stay, and § 105, the section that addresses the power of the court to issue orders necessary to carry out the provisions of the Bankruptcy Code. A plain reading of § 106(a)(3) requires that "such order or judgment for costs or fees under this title" shall be consistent with the provisions and limitations of 28 U.S.C. § 2412(d)(2)(A) and may not include an award of punitive damages.

22

The dissent concludes that because the "statutory abrogation scheme" is unnecessary, the award limitations found in subsection (a)(3) are necessarily inapplicable. We disagree. Two initial points help contextualize our conclusion: 1) in Katz, the Supreme Court did not declare § 106 unconstitutional, but rather, held only that statutory abrogation is unnecessary in light of the "'abrogation . . . effected in the plan of the Convention," 546 U.S. at ___, 126 S. Ct. at 1005; and 2) Katz reaffirmed Congress's power "either [to] treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws." Id. at ___, 126 S. Ct. at 1005. In resolving the applicability of § 106(a)(3) under these undisputed premises, the question, post-Katz, is: even though § 106(a)'s statutory abrogation framework is unnecessary, is all of § 106(a) necessarily inapplicable? That is, do the award limitations imposed in subsection (a)(3) remain?

The dissent posits that a contextual reading of the statutory *scheme* ineluctably renders § 106(a)(3)'s award limitations inapplicable. But it does not necessarily follow, based on a plain reading of the *text*, that subsection (a)(3) is devoid of any meaning and inapplicable now that subsection (a)(1) is unnecessary to abrogate state sovereign immunity here, or that enforcing subsection (a)(3) after Katz is against Congress's intent–to the contrary, it is entirely consistent with such

23

intent. See Dodd v. United States, 545 U.S. 353, 359, 125 S. Ct. 2478, 2483 (2005) (holding that when the statute's language is plain, the sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms).

The issue of Congressional intent is unusual in the context of this case because Katz dramatically altered the assumptions under which Congress (and even the Supreme Court) had been operating with respect to state sovereign immunity and the Bankruptcy Code. That is, until Katz, it was not clear that "the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts." 546 U.S. at ___, 126 S. Ct. at 1005. In fact, as Justice Thomas notes in his Katz dissent, a myriad of cases, including Hoffman v. Connecticut Department of Income Maintenance, 492 U.S. 96, 109 S. Ct. 2818 (1989) (which preceded and prompted the 1994 Bankruptcy Reform Act Amendments to the current § 106) and Seminole Tribe, 517 U.S. at 72-73, 116 S. Ct. 1132-33, indicated otherwise. See id. at ___, 126 S. Ct. at 1007-08 (Thomas, J., dissenting) (arguing that Supreme Court precedent is replete with language barring abrogation of state sovereign immunity under various clauses in § 8 of Article I, including the Bankruptcy Clause).

24

The legislative history of the current § 106 makes clear that § 106's present statutory abrogation framework was created in response to the Supreme Court's rulings "that the States and Federal Government are not deemed to have waived their sovereign immunity by virtue of Congress enacting former § 106(c)." See H. Comm. on the Judiciary, Bankruptcy Reform Act of 1994, H. Rep. No. 103-835, at 42 (1994), reprinted in 1994 U.S.C.C.A.N. 1881, 3350-51 (stating that § 106 "would effectively overrule two Supreme Court cases [including Hoffman] that have held that the States and Federal Government are not deemed to have waived their sovereign immunity by virtue of enacting section 106(c)"). The backdrop to the creation of the current § 106 was the Supreme Court's decision in Hoffman. See id. Hoffman reminded Congress that "to abrogate the States' Eleventh Amendment immunity from suit in federal court . . . Congress must make its intention 'unmistakably clear in the language of the statute.'" 492 U.S. at 101, 109 S. Ct. at 2822 (citations omitted). The Hoffman plurality refrained from analyzing whether Congress had the power under Article I to abrogate the States' sovereign immunity, id., 492 U.S. at 104, 109 S. Ct. at 2824 ("Since we hold that Congress did not abrogate Eleventh Amendment immunity by enacting § 106(c), we need not address whether it had the authority to do so under its bankruptcy power"), and two Justices, each concurring separately, explicitly stated their view that Congress

25

did not have the power to abrogate state sovereign immunity by enacting a statute under Article I. Id.,492 U.S. at 105, 109 S. Ct. 2824-25 (Scalia, J., concurring; O'Connor, concurring) (concurring "on the ground that [Congress] had no power to [abrogate state sovereign immunity under its] . . . Article I [Bankruptcy Clause] powers").[5]

In Hoffman, no Justice even intimated that the States had subordinated their sovereign immunity in the manner described in Katz.[6] In light of Hoffman, it was entirely reasonable for Congress to believe that Supreme Court precedent "suggested" that Congress make its intent to waive the States' sovereign immunity "unmistakenly clear," and establish the statutory abrogation framework that is the current § 106. See 140 Cong. Rec. H10766 (daily ed. Aug. 17, 1994) (statement of Rep. Brooks) (analyzing the purposes behind § 106's enactment and noting that the Supreme Court "suggested" that "§ 106(a)(1) list[] those sections of title 11 with respect to which sovereign immunity is abrogated"). As a corollary, it was also

---

[5] Justice Scalia's reasoning in his Hoffman concurrence prevailed in Seminole Tribe, wherein both the majority and dissenting opinions "reflected an assumption that the holding . . . would apply to the Bankruptcy Clause." See Katz, 546 U.S. at ___, 126 S. Ct. at 996.

[6] Even Justice Marshall, writing for the dissent, would have reversed the Second Circuit's ruling "[b]ecause Congress clearly expressed its intent to authorize a bankruptcy court to issue a money judgment against a State . . . and because Congress has the authority under the Bankruptcy Clause to abrogate the States' Eleventh Amendment immunity," not because the States' had subordinated their sovereign immunity under the plan of the Convention. See Hoffman, 492 U.S. at 106, 109 S. Ct. at 2825 (Marshall, J., dissenting).

natural for Congress, then, to place its limitations on awards (subsection (a)(3)),
into the framework they believed the Supreme Court had "suggested." See id.

As a result, even putting aside our conclusion that the plain text alone
dictates the application of the award limitations in subsection (a)(3), in light of the
jurisprudential understanding of state sovereign immunity at the time of § 106's
drafting, we find it difficult to conclude that Congress intended to include such
award limitations *only* when the abrogation was statutory but exclude such
limitations if it was later revealed that the "relevant "'abrogation' [turned out to be]
the one effected in the plan of the Convention[.]" See Katz, 546 U.S. at ___, 126
S. Ct. at 1005. Katz clarified the "relevant 'abrogation[.]'" See id. It did not
undermine Congress's ability to limit awards against the States.

Since the plain text of the language is applicable, we are loathe to ignore
award limitations that are within Congress's power to enact and refuse to apply
them when the framework that the award limitations were placed in was rendered,
not unconstitutional, but rather, only unnecessary. Given that the result is not only
not "absurd," but aligned with Congress's intent, it is difficult to escape the
application of a plain reading of § 106(a)(3) that applies its award limitations to a
bankruptcy court order issued pursuant to §§ 105 or 362(h). Although §
106(a)(1)'s abrogation was unnecessary now that the Court has clarified that the

27

States acquiesced in a subordination of whatever sovereign immunity they had through the Constitutional Convention, we do not read Katz to render § 106(a)(3)'s limitations unconstitutional or inapplicable.

Because we disagree about the applicability of § 106 post-Katz, we disagree with the dissent's alternative basis for affirming the bankruptcy court's award of punitive damages and fees in excess of the award limitations referenced in § 106(a)(3) as well. The dissent would alternatively affirm the awards based on the fact that the Florida DOR filed of a proof of claim here, hence waiving its sovereign immunity. Although not precedential, we agree with the reasoning in In re Washington and In re Flynn–that § 106(a)(3) limits awards even against a governmental unit *that filed a proof of claim*. See 184 B.R. 172, 175 (S.D. Ga. 1995) (reversing awards against a governmental unit that filed a proof of claim because of the limitations imposed in subsection (a)(3)); 185 B.R. 89, 93-94 (S.D. Ga. 1995) (same). Moreover, the limitations in subsection (a)(3) apply to orders issued pursuant to § 105. See Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1559 (11th Cir. 1996) ("[T]he plain meaning of [§ 106(a)(3)] requires an award of attorney fees under the statutory powers of § 105(a) to be consistent with § 2412(d)(2)(A) which defines those "fees and other expenses" that may be awarded under EAJA.").

28

As a result, the attorney's fees and costs award imposed against the Florida DOR is vacated and remanded for a determination of attorney's fees and costs consistent with the provisions and limitations of section 2412(d)(2)(A) as referenced in § 106(a)(3). Furthermore, we vacate the additional sanction award of $2000 as invalid in light of the limitations in § 106(a)(3) regarding "punitive damages."

## G. Debt Dischargeability

11 U.S.C. § 523(a)(5) disallows discharge of a debt:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, . . . but not to the extent that -- . . .

(B) such a debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

We have held that federal law, not state law, governs a dischargeability of domestic obligations determination. See In re Harrell, 754 F.2d 902, 904-05 (11th Cir. 1985). "A debt is in the nature of support," and therefore nondischargeable, "if at the time of its creation the parties intended the obligation to function as support . . . ." Cummings v. Cummings, 244 F.3d 1263, 1265 (11th Cir. 2001). "[T]he party seeking to hold the debt nondischargeable has the burden of proving

29

by a preponderance of the evidence that the parties intended the obligation as support . . . ." Id. (citation and internal quotations omitted).

The Florida DOR, which argued that the debt was nondischargeable, presented no evidence to the bankruptcy court that the Hawaii debt was in the nature of support. The Florida DOR also asserts that the testimony of the debtor clearly showed the monies owed were for support of his wife and children paid by the State of Hawaii. Omine testified that the Hawaii debt was not in the nature of support. The Florida DOR, however, presented no evidence as to the intent of the parties. Instead, it argues that we should not disregard Hawaiian law that provides that the welfare payments made in cases such as this one are support obligations and non-dischargeable.[7] Though "a court cannot rely solely on the label used by the parties," see id., intent cannot be imputed or proven with the introduction of a state statute on appeal. In light of Omine's testimony that supported a dischargeability determination and the lack of evidence presented by the Florida DOR, the district court correctly affirmed the bankruptcy court's finding that the Hawaii debt was not in the nature of support, and was therefore dischargeable.

---

[7] In a recognition that federal, not state law, governs a dischargeability of domestic obligations determination, the Florida DOR also cites 42 U.S.C. § 656(b), that, it claims, dictates the state law classification be followed. 42 U.S.C. § 656(b), does not resolve the dispute, however, because it requires the bankruptcy court to make the factual determination as to whether the debt is "in the nature of support."

30

### III. CONCLUSION

The district court properly upheld the bankruptcy court's discharge of the support obligation and properly affirmed the bankruptcy court's determination that the Florida DOR violated the automatic stay and, furthermore, that the Florida DOR was not protected by sovereign immunity. As a result, we **AFFIRM** the district court's order affirming the bankruptcy court's determination that the Florida DOR was not immune from the Omines' suit for its violation of the automatic stay. The district court erred, however, in affirming the bankruptcy court's determination that the award limitations set forth in 11 U.S.C. § 106(a)(3) did not apply. As a result, we **REVERSE** and **VACATE** the award of attorney's fees and costs as inconsistent with the limitations of § 106(a)(3) and **REVERSE** and **VACATE** the $2000 awarded as sanctions, and **REMAND** to the district court for proceedings consistent with this opinion.

BLACK, Circuit Judge, concurring in part and dissenting in part:

I agree with all portions of the Court's opinion except Section F. I respectfully dissent because I conclude 11 U.S.C. § 106(a)(3) does not apply to limit the bankruptcy court's award. Section 106(a)(3) would apply only if the bankruptcy court entered judgment pursuant to the *statutory* abrogation of state sovereign immunity embodied in § 106(a). In this case, we do not rely on § 106(a) to affirm the judgment against the Florida DOR. Instead, we rely on the states' consent to subordinate their sovereign immunity at the plan of convention and, alternatively, on Florida's waiver of sovereign immunity by filing a proof of claim. In either case, the limitations in § 106(a)(3) that the 1994 Congress enacted as part of its statutory abrogation scheme in § 106(a)(1) through (a)(4) do not apply.

 A.    Abrogation of State Sovereign Immunity

State sovereign immunity, a concept embodied in the Eleventh Amendment, is an immunity from suit. *See Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779, 111 S. Ct. 2578, 2581 (1991). However, there are certain well-established situations in which states are amenable to suit. First, Congress may abrogate state sovereign immunity if it unequivocally expresses an intent to abrogate state immunity and acts pursuant to a valid exercise of power. *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 425-26 (1985). Second, a state may waive its

sovereign immunity by consenting to suit in federal court, either expressly or in the "plan of the convention." *Blatchford*, 501 U.S. at 779, 111 S. Ct. at 2581.

In 11 U.S.C. § 106(a), Congress purported to abrogate state sovereign immunity, to a limited extent, in proceedings brought under certain enumerated sections of the Bankruptcy Code. *See* 11 U.S.C. § 106(a)(1)-(4). Subsections (a)(1) through (a)(4) together establish Congress's abrogation scheme, with each subsection adding an additional, necessary component to the scheme.[1] Subsection (a)(1) lists the specific sections of the Bankruptcy Code to which the abrogation scheme applies. Subsection (a)(2) abrogates sovereign immunity so as to allow a

---

[1] The relevant text of § 106(a) is as follows:

(a)      Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1)      Sections 105, 106, . . . 362, . . . .

(2)      The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3)      The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4)      The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5)      Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

bankruptcy court to *hear* and *determine* any issue in proceedings applying the enumerated sections to governmental units. Subsection (a)(3) abrogates sovereign immunity so as to allow a bankruptcy court to *issue* an order or judgment against a governmental unit, including a state agency, in such proceedings. Although subsection (a)(3) permits a bankruptcy court to issue an order awarding a money recovery, the subsection also contains two limitations: first, it does not permit an award of punitive damages and second, if the order or judgment is for costs and fees, it requires that the order be consistent with the provisions and limitations of 28 U.S.C. § 2412(d)(2)(A). Finally, subsection (a)(4) abrogates sovereign immunity so as to allow a bankruptcy court to *enforce* any such order or judgment it issues against a governmental unit. As a whole, subsections (a)(1) through (a)(4) comprise Congress's statutory abrogation scheme.

When Congress enacted § 106(a) in 1994, the common perception was that Congress could validly abrogate state sovereign immunity pursuant to its enumerated powers under Article I of the Constitution. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14-19, 109 S. Ct. 2273, 2281-84 (1989) (holding Congress may abrogate state sovereign immunity when legislating pursuant to its Commerce Clause power under Article I of the Constitution as long as it clearly expresses its intent to do so). This perception of Congress's Article I powers changed in 1996

34

when the Supreme Court overruled *Union Gas.* In *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S. Ct. 1114 (1996), the Supreme Court held that Congress could not abrogate state sovereign immunity pursuant to its Article I powers, but only pursuant to § 5 of the Fourteenth Amendment. *Id.* at 45, 116 S. Ct. at 1118. While the Supreme Court did not address § 106(a) in *Seminole Tribe*, its holding implicitly rendered § 106(a) an unconstitutional abrogation of sovereign immunity because Congress enacted § 106(a) pursuant to its Article I bankruptcy power. *See In re Crow*, 394 F.3d 918, 923 (11th Cir. 2004). In 2004, this Court addressed the constitutionality of § 106(a) in *In re Crow* and held that, in light of *Seminole Tribe*, Congress's attempt to abrogate state sovereign immunity in *in personam* bankruptcy cases was invalid. *Id.* at 921, 924.

In 2006, when presented with an opportunity to address whether § 106(a) was a valid abrogation of state sovereign immunity, the Supreme Court did not answer the question. *See Cent. Va. Cmty Coll. v. Katz*, 546 U.S. 356, ___, 126 S. Ct. 990, 995 (2006). Instead, the Supreme Court held § 106(a) was "not necessary" to authorize a suit against a state in certain bankruptcy proceedings. *See id.* at ___, 126 S. Ct. at 995, 1000-05 (holding Congress's attempted abrogation of sovereign immunity in § 106(a) was unnecessary to authorize a bankruptcy court's *in personam* jurisdiction over ancillary orders necessary to

effectuate its *in rem* jurisdiction). The Court explained that the statutory abrogation was unnecessary because the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Id.* at ___, 126 S. Ct at 1004.

Consequently, after *Katz*, the entire statutory scheme in § 106(a)(1) through (a)(4) is unnecessary and inapplicable to suits against a state in proceedings necessary to effectuate a bankruptcy court's *in rem* jurisdiction. In particular, *Katz* renders § 106(a)(3), which abrogates state sovereign immunity so as to allow a bankruptcy court to *issue* an order against a state with some limitations, unnecessary and inapplicable in such bankruptcy proceedings. Section 106(a)(3) has nothing to abrogate or limit because, according to *Katz*, bankruptcy courts have always had the power to enter a money judgment against states in such proceedings.

After *Katz*, any other interpretation of § 106(a) is unpersuasive. For instance, if § 106(a)(1) is sufficient in and of itself to abrogate sovereign immunity (without regard to § 106(a)(2)-(a)(4)), it would render § 106(a)(2), the first sentence of § 106(a)(3), and § 106(a)(4) meaningless. Section 106(a)(2), which permits a bankruptcy court to hear and determine issues against a state, would have

no purpose because a state would already be amenable to suit pursuant to

§ 106(a)(1)'s "abrogation" of sovereign immunity. Likewise, the first sentence of

§ 106(a)(3), which permits a bankruptcy court to issue money judgments against a

state, would also have no purpose because the states would already be amenable to

money judgments pursuant to § 106(a)(1)'s "abrogation." Finally, § 106(a)(4),

which permits a bankruptcy court to enforce a judgment against a state, would also

have no purpose because a state would be amenable to enforcement pursuant to

§ 106(a)(1)'s "abrogation." Section 106(a) only has meaning if it is read as a

statutory *scheme* of abrogation, effected through subsections 106(a)(1), (a)(2),

(a)(3), and (a)(4). Thus, after *Katz*, § 106(a), in its entirety, is inapplicable because

there is no sovereign immunity for its subsections to abrogate.

Therefore, a plain reading[2] of the statutory scheme indicates that any

limitations in subsections (a)(1) through (a)(4) – such as those in subsection (a)(3)

regarding punitive damages and attorney's fees – apply to an award against a

---

[2] The majority suggests that by reading the statute as a whole, I give it a "contextual reading" and ignore the plain meaning of § 106(a)(3). I admit, unlike the majority, I do not read the second sentence of § 106(a)(3) in isolation. Instead, I consider a plain reading of subsection (a)(3) to include consideration of the entire statute. In so doing, I follow the guidance of the Supreme Court. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 574 (1991) ("[W]e do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context."). My interpretation, therefore, is informed by the plain meaning of the text in relation to the statute as a whole or, in other words, by its context.

governmental unit only where the *statutory* abrogation of state sovereign immunity created the bankruptcy court's jurisdiction to enter the award. It is ultimately irrelevant whether, in enacting § 106(a)(3), the 1994 Congress actually intended that the limitations in subsection (a)(3) apply to *all* awards issued against a state, and not only awards issued pursuant to the statutory abrogation scheme in § 106(a)(1) through (a)(4). The fact remains that the 1994 Congress specifically placed the limitations in the text of § 106(a), and the limitations appear nowhere else in the Bankruptcy Code. Of course, Congress may now exercise its plenary power over the uniform laws of bankruptcy to limit all awards against a state in bankruptcy proceedings, but it has yet to do so.

In the instant case, the limitation in § 106(a)(3) does not apply to the bankruptcy court's award because, as the majority explains, § 106(a)'s statutory abrogation of sovereign immunity did not create the bankruptcy court's jurisdiction to issue a judgment against the Florida DOR. Therefore, I would affirm the bankruptcy court's award of punitive damages and its determination of attorney's fees.

B.  <u>Waiver of State Sovereign Immunity</u>

The majority also held the Florida DOR waived its sovereign immunity in this case by filing a proof of claim. Even if we affirmed the judgment against the

38

Florida DOR based on its waiver of sovereign immunity, rather than on *Katz*, I would likewise affirm the bankruptcy court's award of punitive damages and determination of attorney's fees.

Where a state waives sovereign immunity by filing a proof of claim, the scope of the waiver is limited to the adjudication of that claim. *In Re Burke*, 146 F.3d 1313, 1319 (11th Cir. 1998). Our case law has not provided any limitations on an award issued against a state where the state has waived sovereign immunity by filing a proof of claim. The claim in this case was the Florida DOR's violation of the automatic stay. "[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including *costs and attorneys' fees*, and, in appropriate circumstances, may recover *punitive damages*." 11 U.S.C. § 362(h) (now § 362(k)(1)) (emphasis added). Further, the bankruptcy court entered its order pursuant to 11 U.S.C. § 105(a), which grants the court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 does not contain limitations on an award of punitive damages or attorney's fees. Therefore, even if we relied on the Florida DOR's waiver of sovereign immunity to affirm the judgment against it, there are

no limitations on the bankruptcy court's award of punitive damages and determination of attorney's fees.[3]

For the foregoing reasons, I respectfully dissent in Section F of the majority opinion, and I concur in all other respects.

---

[3] I note that the cases the majority cites for this issue, *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539 (11th Cir. 1996), *In re Washington*, 184 B.R. 172 (S.D. Ga. 1995), and *In re Flynn*, 185 B.R. 89 (S.D. Ga. 1995), have limited persuasive value. In these cases, debtors sought relief against the Internal Revenue Service, a *federal* "governmental unit," and the courts specifically relied on 11 U.S.C. § 106 to find a waiver of *federal* sovereign immunity. By contrast, the instant case deals with the waiver of *state* sovereign immunity pursuant to *In Re Burke*, 146 F.3d 1313, 1319 (11th Cir. 1998). We specifically do not rely on § 106 to find a waiver of *state* sovereign immunity. Because this case does not require I answer the question, I express no opinion on whether the limitations in the Equal Access to Justice Act apply to *federal* waivers of sovereign immunity pursuant to § 106.