[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13222
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2010
JOHN LEY
CLERK

D. C. Docket Nos. 09-20863-CV-CMA, 05-10255-BKC-AJ

In Re:         DANIEL RODRIGUEZ,

                                                                    Debtor.

_____

FLORIDA DEPARTMENT OF REVENUE,

                                                                    Plaintiff-Appellant,

                              versus

DANIEL RODRIGUEZ,

                                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 22, 2010)

Before DUBINA, Chief Judge, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Florida Department of Revenue (hereinafter "the department") appeals the district court's order which affirmed an order of the bankruptcy court holding the State of Florida in contempt for sending debt-collection letters to Defendant-Appellee Daniel Rodriguez after Mr. Rodriguez had filed for Chapter 13 bankruptcy and the bankruptcy court had confirmed his Chapter 13 plan. Appellant claims that the district court misinterpreted the bankruptcy statutes, and that its order was inequitable, violated the domestic relations exception to federal jurisdiction, and was barred by Eleventh Amendment immunity.

## I. BACKGROUND

On January 13, 2005, Mr. Rodriguez commenced a voluntary Chapter 13 case and filed his Chapter 13 plan with the bankruptcy court in the Southern District of Florida. Rodriguez filed his Revised First Amended Plan on May 11 of that year and on May 25, the bankruptcy court confirmed that Revised First Amended Plan.

On July 20, 2005, the State of Florida filed a proof of claim in the amount of $7,686.06, representing Rodriguez' pre-petition child support delinquencies. Although the State did not file a post-petition request for payment for the post-petition child support obligation which would have come due during the pendency

2

of the bankruptcy proceedings, on September 13, 2005, Rodriguez filed his First Modified Plan, which included a provision to make monthly payments on the post-petition child support obligation ordered by the State domestic relations court. The bankruptcy court entered an order approving the First Modified Plan on October 6, 2005. Rodriguez filed a Second Modified Plan on July 16, 2007, which included a provision for payment of only one-half of the continuing child support obligation as ordered by the State domestic relations court. The bankruptcy court approved this plan on August 30, 2007.

Acting in its capacity as a Child Support Collections Agency, the department sent three letters to Rodriguez during the course of his bankruptcy. The first letter was mailed on April 3, 2006, and was entitled "Notice of Past Due Support." The second letter was mailed November 1, 2007 and was entitled "Notice of Appointment Regarding Past Due Support." The third letter was dated July 10, 2008 and was entitled "Statement of Rights and Duties: Income Deduction." In response to these letters, Rodriguez filed a motion for contempt against the State in the bankruptcy court, claiming that the letters violated the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a), and seeking attorney's fees and punitive damages against the State for its actions in sending the letters.

After a hearing on the matter, the bankruptcy court concluded that the State's

actions did violate the automatic stay and granted Rodriguez's motion for contempt. Although the bankruptcy court declined to impose any punitive damages against the State, it did grant attorney's fees to Rodriguez for expenses incurred trying to fend off the State's collection actions. In addition, the court imposed a fine against the State of $10,000 for each of the three stay violations, but held that the State could purge this fine by not sending any further letters to Rodriguez in violation of the stay.

The State appealed the bankruptcy court's order to the district court, asserting that the bankruptcy court misinterpreted the bankruptcy code and that, even if it did violate the automatic stay provision, Eleventh Amendment immunity barred enforcement of the bankruptcy court's order. The district court rejected the State's arguments. First, the district court held that, although the State did not violate the automatic stay provisions (because those provisions contained an exception for collection of child support), it did violate the terms of Rodriguez' confirmed plan and, therefore, the State was in contempt of the bankruptcy court's order. Second, the district court concluded that, by filing its claim, the State waived sovereign immunity and was subject to liability. This appeal followed.

## II. ISSUES

I. Whether the district court erred in affirming the bankruptcy court's order

4

sanctioning the State of Florida based upon its finding that the State violated the debtor's confirmed plan and was therefore in contempt.

II. Whether the bankruptcy court is without jurisdiction to interfere with state court orders regarding the debtor's child support obligations.

III. Whether Eleventh Amendment immunity bars the instant action.

### III.  STANDARD OF REVIEW

Determinations of law made by either the bankruptcy court or the district court are reviewed by this court de novo. *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992). The bankruptcy court's factual determinations are subject to review under the clearly erroneous standard. *Id.* A district court is not authorized to make independent factual findings. *Id.* (citing *In re Sublett*, 895 F.2d 1381, 1383-84 (11th Cir. 1990)).

### IV.  DISCUSSION

The district court held that, while the State did not violate the automatic stay provisions of 11 U.S.C. § 362(a), it nonetheless violated the terms of Rodriguez's confirmed plan and, therefore, the bankruptcy court did not commit error in finding the State in contempt and awarding attorney's fees. We agree.

Title 11 U.S.C. § 362(a) provides that, subject to certain exceptions, the filing of a bankruptcy petition operates as a stay, applicable to all entities of, among other

5

things, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). If no exception applied in this case, the State's action in sending three collection letters to Rodriguez during the pendency of his bankruptcy would clearly have violated the automatic stay provision of § 362(a). However, an exception does apply: § 362(b)(2)(B), which excepts "the collection of a domestic support obligation from property that is not property of the estate." This exception applies here because, pursuant to 11 U.S.C. § 1327(b), after Rodriguez's plan was confirmed by the bankruptcy court, all of Rodriguez's property not necessary to fulfill the requirements of the plan was revested with Rodriguez personally as a matter of law. 11 U.S.C. § 1327(b); *Telfair v. First Union Mortgage Corporation*, 216 F.3d 1333, 1340 (11th Cir. 2000). Therefore, subsequent to confirmation, the property was "not property of the estate" and subject to the § 362(b)(2)(B) child support exception. Accordingly, the State did not violate the automatic stay provision of § 362(a).

However, this does not end the inquiry. As the district court held, § 362 does not exist in a vacuum and must be read alongside various other portions of the Bankruptcy Code. Title 11 U.S.C. § 1327 addresses the effects of the confirmation of a bankruptcy plan. That statute provides in part:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). Under this provision, once a bankruptcy plan is confirmed, the debtor and each creditor is bound by its terms. Here, the State violated the confirmation order by asserting an interest other than those provided for in the plan after confirmation. *In re Gellington*, 363 B.R. 497, 502 (Bankr. N.D. Tex. 2007).

In *In re Gellington*, the State garnished the wages of a debtor owing child support subsequent to the debtor's Chapter 13 bankruptcy plan being confirmed by the bankruptcy court. *Id.* The court found that, while the State was not in violation of the automatic stay because of the § 362(b)(2)(B) exception, it was in violation of the confirmation order as it was bound by its provisions pursuant to § 1327(a). *Id.* The court in *In re Gellington* rejected the State's argument that it was acting properly under the § 362(b) exception, holding that "after confirmation, the terms of the plan and the confirmation order control." *Id.* As noted by the district court, the same result is warranted in this case–although the State cannot be said to have violated the automatic stay provision of § 362(a) because of the child support exception to that statute, it did violate the terms of Rodriguez's bankruptcy plan, as confirmed by the bankruptcy court. Because the State, like all creditors, was bound by the terms of the confirmed plan pursuant to § 1327(a), we conclude that the

bankruptcy court did not err in granting Rodriguez's motion for contempt.

In its order affirming the bankruptcy court, the district court found that Sections 1327 and 362 are irreconcilable. The district court's reasoning was as follows: Prior to confirmation, a child support creditor is unable to attempt to collect child support from the debtor because, prior to confirmation, all property is the property of the bankruptcy estate and § 362(b) allows for an exception for the stay only as to funds which are not part of the bankruptcy estate. Although § 1327(b), which provides that following confirmation property revests with the debtor, allows a child support creditor to seek collection from the debtor, § 1327(a) forbids collection of any debt not confirmed by the plan. The district court concluded, therefore, that the exception in § 362(b) cannot coexist with the confirmation effects of § 1327(a). The district court went on to note that, because the 1994 amendments to the Bankruptcy Code provided that a Chapter 13 plan must provide for any support obligations due to the debtor, there was no need for the § 362(b)(2)(B) child support exception and that the exception was somewhat superfluous. This finding is supported by case law from this court. In *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992), for instance, this court held that, based on the statutory scheme, the § 362(b)(2) exception "has little or no practical effect in Chapter 13 situations." *Id.* at 1577. Accordingly, the district court's analysis is

sound.

The State argues that, even if it violated the confirmed plan, the bankruptcy court should have abstained from getting involved in this matter because it involves domestic affairs, a matter normally left to the states. The State cites *Carver*, where this court held: "It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" 954 F.2d at 1579. We agree with the district court that, while it has historically been the case that domestic affairs belong to the laws of the states, it is clear that Congress intended for the federal courts, through the Bankruptcy Code, to address the payment of domestic support obligations. As noted by the district court, this does not mean that the bankruptcy court determines the amount of support, or any other details of the domestic affairs; those remain governed by the state courts. "Nevertheless, the Bankruptcy Code provides for the payment of those obligations, as a priority, under the debtor's Plan." District Court Order at 13.

Although this court declined to get involved in a matter of domestic affairs in *Carver*, the case for abstention was considerably stronger in that case than it is here. In *Carver*, we noted that, although the debtor was subject to a suit while seeking bankruptcy protection, much of the situation was of his own making, and that he

9

had arreared several times in the past. *Id.* at 1580. We held that under those circumstances, "the interests of comity weigh[ed] heavily in favor of abstention." *Id.* Those factors are not present in this case. We went on to hold that, in *Carver*, "it [was] clear that the Bankruptcy Court . . . was being used as a weapon in the on-going dispute between [the Carvers]." *Id.* Again, this factor is not present here. Finally, in *Carver*, the appellants were found to have willfully violated the automatic stay under § 362 and fined over $18,000. In this case, although the State was fined, the court held that it could purge the fine by ceasing to send collection letters to Mr. Rodriguez. The only actual monetary reward was that of reasonable attorney's fees. Accordingly, while we are mindful that abstention is sometimes appropriate when dealing with matters of family law such as the payment of child support, we find that such abstention was not necessary in this case.

Finally, the State argues that Eleventh Amendment immunity protects it from liability. The district court rejected this argument and held that, once the State filed its proof of claim, it waived its sovereign immunity as a matter of law. We agree. Title 11 U.S.C. § 106(b) provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

10

Under this statute, we conclude that the State waived its sovereign immunity defense with respect to the claim at issue here, which arose out of the same transaction or occurrence of which the State's claim arose. In its brief, the State argues that § 106(a) is unconstitutional. The State is correct that, in *In re Crow*, 394 F.3d 918, 924 (11th Cir. 2004), this court held that, because Congress may not abrogate state sovereignty pursuant to its Article I Bankruptcy Clause powers, and because § 106(a) was not validly enacted pursuant to its powers under § 5 of the Fourteenth Amendment, § 106(a) was unconstitutional. *Id.* The problem with the State's constitutional argument, however, is that the district court's finding of waiver was based on § 106(b), not § 106(a)'s "forced abrogation" provision. As is obvious from subsequent decisions, our holding in *Crow* did not affect the applicability of § 106(b). *See, e.g.*, *In re Omine*, 485 F.3d 1305, 1316 (11th Cir. 2007). Accordingly, we agree with the district court that the State's filing of its proof of claim in this case had the effect of waiving its sovereign immunity as to the claim at issue.

In sum, we agree with the district court's finding that the State violated the terms of Rodriguez's confirmed plan and, therefore, that the bankruptcy court's finding of contempt and award of attorney's fees was appropriate. We further agree that the bankruptcy court was correct in declining to abstain from deciding this

11

matter. Finally, we agree with the district court that, under § 106(b), by filing its proof of claim in this case, the State waived its defense of sovereign immunity. For these reasons, we affirm the district court's order affirming the bankruptcy court's order holding the State of Florida in contempt.

AFFIRMED.