[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14804
_____

D.C. Docket No. 1:15-cv-20023-KAM
Bkcy No. 0-11-bkc-23183-LMI

In re:  IRAIN LAZARO GONZALEZ,

Debtor.

_____

STATE OF FLORIDA DEPARTMENT OF REVENUE,

Plaintiff-Appellant,

versus

IRAIN LAZARO GONZALEZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 11, 2016)

Before JORDAN, ROSENBAUM, and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

Following the confirmation of Appellee Irain Gonzalez's Chapter 13 bankruptcy plan, he received notice that his work-related travel reimbursement would be withheld at the request of the State of Florida Department of Revenue ("DOR") for the payment of a domestic support obligation ("DSO"). Because the DOR attempted to intercept a payment to Gonzalez after confirmation of his plan, the bankruptcy court found the DOR in contempt for violating the bankruptcy court's confirmation order and awarded attorney's fees to Gonzalez as a result. The district court affirmed the bankruptcy court's order of contempt and award of attorney's fees. The DOR now appeals, contending the bankruptcy court erred by holding it in contempt. For the reasons explained below, we affirm.

**I.**

In May 2011, Gonzalez filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Soon after confirmation of Gonzalez's plan under Chapter 13, the DOR filed a proof of claim for arrearages in the amount of $2,400 related to a DSO. As a result, Gonzalez filed his First Amended Plan, which included a plan for full payment of the arrearages for the DSO and direct payment

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

of existing child support to the DSO obligee. The bankruptcy court subsequently confirmed Gonzalez's First Amended Plan.

In April 2012, Gonzalez moved to hold the DOR in contempt for its efforts to intercept a travel reimbursement payment in the amount of $4,700.[1] Because of the intercept, Gonzalez, a federal employee, averred that he was unable to make the required payment on his government-issued credit card and was therefore potentially subject to suspension from work if the funds were not released. During the hearing on the matter, the DOR agreed to release the reimbursement payment but did not concede that its actions constituted a violation of the automatic stay or the confirmed plan. The DOR, however, did cease all collection activities related to the DSO.

Although the DOR's collections efforts had halted, Gonzalez renewed his motion to hold the DOR in contempt, maintaining that its actions violated the binding effect of the First Amended Plan. The bankruptcy court held the DOR in contempt for violating the confirmed plan and awarded Gonzalez attorney's fees. *In re Gonzalez*, No. 11-23183-BKC-LMI, 2012 WL 2974813, at *5 (Bankr. S.D. Fla. July 20, 2012). The district court affirmed the bankruptcy court's order of

---

[1] It appears that before this motion for contempt, the DOR had intercepted another travel expense payment and had frozen a bank account jointly held by Gonzalez and his mother. According to Gonzalez, the DOR unfroze the bank account but neither returned the intercepted reimbursement payment nor took efforts to cease intercepting future reimbursement payments.

contempt and award of attorney's fees. *In re Irain Gonzalez*, No. 1:15-CV-20023-KAM, 2015 WL 5692561, at \*7-8 (S.D. Fla. Sept. 29, 2015).

## II.

"'As the second court of review of a bankruptcy court's judgment,' we independently examine the factual and legal determinations of the bankruptcy court and employ the same standards of review as the district court." *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005) (quoting *In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004)). As such, we review a bankruptcy court's factual findings for clear error and conclusions of law de novo. *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014).

## III.

The DOR contends that the bankruptcy court erred in holding it in contempt for intercepting Gonzalez's reimbursement payment even though its collection efforts occurred after the confirmation of Gonzalez's First Amended Plan. According to the DOR, "the lower courts effectively concluded that the mere confirmation of a Chapter 13 bankruptcy plan . . . serves to unambiguously proscribe a DSO creditor from taking the collection actions at issue in this case." To this end, the DOR argues that the lower courts failed to appreciate a key change Congress made to the Bankruptcy Code when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-

4

8, 119 Stat. 23, ignored legislative history, created a conflict between two statutory provisions in the Bankruptcy Code, and based their decisions on a case that predated BAPCPA. In other words, the DOR believes that legislative intent and statutory construction control the disposition here.

This case involves the interplay between two sections of the Bankruptcy Code: 11 U.S.C. §§ 362 and 1327. In broad terms, § 362 initiates an automatic stay against "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" after the filing of a petition for bankruptcy. 11 U.S.C. § 362(a)(6). One of the important exceptions to the automatic stay—and the one most relevant here—permits "the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute." *Id.* § 362(b)(2)(C). The other relevant statutory provision in this case, § 1327(a), provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." When read together, these statutes present the question at issue in the instant action: does the exception to the automatic stay for DSOs apply even after the confirmation of a debtor's Chapter 13 plan?

The DOR insists that the legislative history and intent behind BAPCPA's changes to the domestic relations provisions of the Bankruptcy Code govern the question before this court. In amending the domestic relations portion of the Bankruptcy Code, Congress considered several general objectives:

> 1. Bankruptcy should interfere as little as possible with the establishment and collection of on-going obligations for support, as allowed in State family law courts.
>
> 2. The Bankruptcy Code should provide a broad and comprehensive definition of support, which should then receive favored treatment in the bankruptcy process.
>
> 3. The bankruptcy process should insure the continued payment of on-going support and support arrearages with minimal need for participation in the process by support creditors.
>
> 4. The bankruptcy process should be structured to allow a debtor to liquidate nondischargeable debt to the greatest extent possible within the context of a bankruptcy case and emerge from the process with the freshest start feasible.

146 Cong. Rec. S11683-02 (daily ed. Dec. 7, 2000) (statement by Sen. Grassley). While the DOR suggests that the four general principles behind the changes to the domestic relations sections of the Bankruptcy Code support its position, the focus of its legislative-intent argument appears to be on Congress's explanation of § 362(b)(2)(C).

As part of Congress's section-by-section analysis of the changes under BAPCPA, it provided the following context to § 362(b)(2)(C):

6

> In this provision Congress has divested the bankruptcy court of exclusive jurisdiction over the bankruptcy estate to the extent a debtor's wages are estate property. Under prior law such withholding would have been allowed only if it were determined that the debtor's income was no longer property of the estate. This section specifically allows the use of estate property to pay support through the wage[-]withholding process without any bankruptcy[-]imposed limitation. The purpose of this provision is to allow income withholding to be implemented or to continue after a Chapter 11, 12 or 13 petition is filed, just as it would if a Chapter 7 petition were filed. The income[-]withholding provisions were enacted to allow compliance with procedures mandated in the Child Support Enforcement Program, Social Security Act, Title IV-D. Income withholding applies to the collection of on-going support and support arrearages. It may be implemented by court order or through an administrative process.

146 Cong. Rec. S11683-02 (daily ed. Dec. 7, 2000) (statement by Sen. Grassley).

Within this explanation of § 362(b)(2)(C), the DOR highlights the phrase "without any bankruptcy[-]imposed limitation" as explicitly supporting its position. According to the DOR, Congress's explanation of § 362(2)(b)(C) coupled with the clear language of the section make apparent that Congress intended for DSO collection efforts to continue unhindered by the confirmation of a plan.

The DOR also argues that the Congressional Record reflects that Congress understood the problem with the Bankruptcy Code's treatment of DSOs under the pre-BAPCPA law. Prior to BAPCPA, the Bankruptcy Code only excepted from the automatic stay "the collection of alimony, maintenance, or support from property *that is not property of the estate*." 11 U.S.C. § 362(b)(2)(B) (1998) (emphasis added). Because § 362(b)(2)(B) did not include post-petition wages and

7

property, this court observed that the section "ha[d] little or no practical effect in Chapter 13 situations." *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir. 1992). The DOR believes that the problem identified by *Carver* is what Congress sought to fix with § 362(b)(2)(C) and explained as such in the Congressional Record.

> [U]nder former law the automatic stay did not apply to the collection of support so long as it was collected from property which was not property of the bankruptcy estate. Since property of the estate included debtor's income in Chapter 12 and 13 cases, at least until confirmation of the plan, a support creditor had no way of obtaining either on-going support or prepetition support arrearages, unless the obligor/debtor paid these debts voluntarily or the creditor obtained relief from the stay. These amendments deal with both issues.

146 Cong. Rec. S11683-02 (daily ed. Dec. 7, 2000) (statement by Sen. Grassley).

Gonzalez offers two succinct responses to the DOR's statutory-intent arguments. First, Gonzalez contends that if Congress intended for DSO collection efforts to be exempt from the binding effect of § 1327, it could have easily "added the phrase 'non-Domestic Support Obligation' to 11 U.S.C. [§] 1327(a)." Second, Gonzalez asserts that Congress had no intention of exempting the collection of DSOs after the confirmation of a plan when that plan reflects the full payment of the DSO because "allowing such a preposterous framework would doom every Chapter 13 case that involves a DSO creditor." As Gonzalez explains, the interpretation espoused by the DOR would permit a DSO creditor after the confirmation of a plan to seize a vehicle paid in full by the debtor, thereby preventing the debtor from going to work and earning money to make payments

8

under the plan.  In short, Gonzalez believes that a DOR creditor could essentially wreck a Chapter 13 plan by ignoring the specific payment structure outlined by it.

With respect to Gonzalez's first argument, the DOR notes that Congress's "[s]ilence must yield to actual evidence of intent."  In other words, the DOR believes that this court should not draw an adverse inference from Congress's silence as to § 1327(a) because that would undermine Congress's express intent manifested by § 362(b)(2)(C).  To this point, the DOR reminds this court that we have "previously cautioned against drawing inferences from congressional silence."  *See White v. Mercury Marine Div. of Brunswick, Inc.*, 129 F.3d 1428, 1434 (11th Cir. 1997).  Further, in response to the concern that permitting post-confirmation collection would cause disarray of a debtor's finances, the DOR argues that "Congress clearly recognized that a *promise* to pay a DSO at some point in the future is not enough."

Although the DOR makes a strong legislative-intent argument for DSO creditors to collect post-petition—something clearly authorized by § 362(b)(2)(C)—it falls short of demonstrating that Congress intended the exception for the automatic stay to similarly apply following the confirmation of a plan.  Rather, the Congressional Record only indicates that Congress sought to enable a DSO creditor to reach assets of the estate post-petition without having to seek relief from stay because "a support creditor had no way of obtaining either

9

on-going support or prepetition support arrearages." 146 Cong. Rec. S11683-02 (daily ed. Dec. 7, 2000) (statement by Sen. Grassley). But the same concerns do *not* exist post-confirmation. After all, not only are DSOs non-dischargeable in bankruptcy, 11 U.S.C. §§ 523(a)(5), (15), 1328(a)(2), but the Bankruptcy Code also requires that DSO creditors be paid in full in a Chapter 13 plan, 11 U.S.C. §§ 507(a)(1), 1322(a)(2). Of course, as the DOR notes, the requirement that DSO creditors be paid in full predated the enactment of BAPCPA. True enough, but the Congressional Record *only* indicates that Congress set out to cure a problem with DSO creditors being unable to collect post-petition, not to alter the post-confirmation process. To reach the same conclusion as the DOR, the court would have to disregard the clear text of § 362(b)(2)(C) and ignore that the Bankruptcy Code already required DSO creditors to be paid in full. The DOR conflates post-petition and post-confirmation processes in the hopes of creating a conflict between §§ 326(b)(2)(C) and 1327(a) where one does not exist. Simply put, the post-BAPCPA code now allows a DSO creditor to collect after the imposition of the automatic stay, but that right ends after confirmation of the plan. Therefore, neither the legislative history nor intent of § 326(b)(2)(C) impacts the clear language of § 1327(a) that binds *all* creditors to the plan.

In addition to discussing the legislative history of § 326, the parties also focus their attention on *In re Rodriguez*, 367 F. App'x 25 (11th Cir. 2010), with

10

very similar facts as the instant matter, although it applied pre-BAPCPA law.  In *Rodriguez*, this court affirmed the bankruptcy court's award of attorney's fees to the debtor based on the DOR's efforts to collect a DSO after confirmation of the debtor's plan.  *Id*. at 30.  The conclusion in *Rodriguez* is the same adopted by the bankruptcy court and the district court in this case:  "[A]lthough the State cannot be said to have violated the automatic stay provision of § 362(a) because of the child[-]support exception to that statute, it did violate the terms of Rodriguez's bankruptcy plan, as confirmed by the bankruptcy court."  *Id*. at 28.  However, to understand this court's holding in *Rodriguez*, it is important to examine the case that *Rodriguez* relied on, *In re Gellington*, 363 B.R. 497 (Bankr. N.D. Tex. 2007).

Unlike *Rodriguez*, *Gellington* involved the application of § 362(b)(2)(C) because the debtor filed a petition for bankruptcy after BAPCPA went into effect.  *In re Gellington*, 363 B.R. at 499-501.  The debtor sought sanctions from the Office of the Texas Attorney General, Child Support Division (the "CSD") after the CSD garnished the debtor's paycheck following confirmation of the debtor's Chapter 13 plan.  *Id*. at 499-500.  While the bankruptcy court considered the language of § 362(b)(2)(C) to be clear in meaning that the "automatic stay had no bearing on the garnishment action by the [CSD] for collection of the domestic support obligation," it clarified that the confirmation order meant that the CSD and the debtor were both bound to the plan based on § 1327(a).  *Id*. at 502.  As the

11

bankruptcy court explained, the plan binds all creditors because "an order confirming a Chapter 13 plan is *res judicata* regarding all issues that could have been decided at the confirmation hearing." *Id*. (citing *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1049–50 (5th Cir. 1992)).[2]  Because the debtor's plan in *Gellington* did not have any provision permitting the CSD to garnish the debtor's wages, the bankruptcy court found the CSD's collection efforts in violation of the plan. *Id*. at 502-03.

The DOR criticizes the bankruptcy court's and the district court's reliance on *Rodriguez*, emphasizing that *Rodriguez* applied pre-BAPCPA law, but the DOR ignores this court's reliance on *Gellington* in deciding *Rodriguez.*[3]  Instead, the DOR contends that this court should adopt the reasoning of *In re McGrahan*, 459 B.R. 869 (B.A.P. 1st Cir. 2011).  In *McGrahan*, the court found that the confirmed plan's silence as to the Department of Health and Human Services' ("DHHS")

---

[2] The bankruptcy court noted that the logic behind the binding effect of the plan is to "provide finality so that all parties may rely on it without concern that later actions could result in a subsequent change or revocation of the order." *In re Gellington*, 363 B.R. at 502 (citing *In re Layo*, 460 F.3d 289, 293 (2d Cir. 2006)).

[3] Several cases post-BAPCPA also concluded that the binding effect of § 1327(a) prohibited a DSO creditor from taking collection efforts after the confirmation of a plan. *In re Hutchens*, 480 B.R. 374, 384 (Bankr. M.D. Fla. 2012) ("[O]nce a Chapter 13 plan has been confirmed pursuant to § 1327 it becomes binding on all creditors, including holders of prepetition domestic support obligations."); *In re Fort*, 412 B.R. 840, 850 (Bankr. W.D. Va. 2009) ("If the State's contention that its post-confirmation collection activities are not affected by the provisions of a confirmed plan were to be accepted, then a creditor with protection against the automatic stay would be free to collect a debt in any way it sees fit."); *In re Worland*, No. 08-2148-AJM-13, 2009 WL 1707512, at *2 (Bankr. S.D. Ind. June 16, 2009) (finding that the DSO creditor violated the plan because "[n]either the confirmed plan nor the confirmation order provide[d] for the [DSO creditor] to garnish [the Debtor]'s wages or intercept the Debtors' tax refund as a method of satisfying the support claim").

ability to intercept tax refunds did not prevent it from taking such action because of 11 U.S.C. § 362(b)(2)(F), which "expressly excepts from the automatic stay the interception of a debtor's tax refunds for the payment of a support obligation, even where the tax refund is property of the estate." *McGrahan*, 459 B.R. at 874. The court explained that "[t]he binding effect of a chapter 13 plan extends . . . only to those issues 'which were actually litigated by the parties and any issue necessarily determined by the confirmation order,'" *id*. at 875 (quoting *In re Torres Martinez*, 397 B.R. 158, 165 (B.A.P. 1st Cir. 2008)), and that there is no binding effect "as to issues 'not sufficiently evidenced in a plan to provide adequate protection to the creditor,'" *id*. (quoting *In re Enewally*, 368 F.3d 1165, 1172-73 (9th Cir. 2004)). Therefore, the court concluded that the only way that the confirmed plan would be able to preclude the DHHS from intercepting the debtor's tax refunds would be by having the plan specifically state such. *Id*. According to the DOR, *McGrahan*'s interpretation of § 1327(a) supports its position that "simply by requiring clear injunctive language in a plan, relating to a DSO creditor whose rights are not stayed by 11 U.S.C. § 362, gives meaning to both" §§ 362(b)(2)(C) and 1327(a).

We find *McGrahan* unpersuasive. The full text of the quote used in *McGrahan* for the proposition that the Chapter 13 binds *only* issues actually litigated states as follows:

> A leading bankruptcy authority has said that "the order confirming a chapter 13 plan represents a binding determination of the rights and

13

liabilities of the parties as ordained by the plan," 8 Collier on Bankruptcy, ¶ 1327.02, at 1327-3 (15th ed. 1998), and that it is "quite clear that the binding effect . . . extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." *Id.* at 1327-5.

*Torres Martinez*, 397 B.R. at 165. As Gonzalez notes, the insertion of the word "only" into the partial quote taken from *Torres Martinez* and used by the court in *McGrahan* indicates that the binding effect of the plan applies solely to issues actually litigated, rather than just being inclusive of issues actually litigated. The inclusive reading of the quote found in *Torres Martinez*—that is, that the binding effect includes issues actually litigated, plus those that could have been litigated— more accurately tracks the actual text of § 1327(a) than what was proposed by *McGrahan*. *See* § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and *whether or not such creditor has objected to*, has accepted, or has rejected the plan." (emphasis added)). Furthermore, the inclusive reading is also supported by the other case cited in *McGrahan*, which noted that "[t]he binding effect of confirmation as *res judicata* encompasses *all the issues that were or could have been litigated* by the parties at or before the confirmation hearing." *In re*

14

*Marquez*, No. 10-03882, 2011 WL 4543226, at \*11 (Bankr. D.P.R. Sept. 28, 2011) (emphasis added).[4]

*McGrahan* also inaccurately quoted *Enewally* when it explained that a confirmed plan must provide "adequate protection" to creditors rather than just "adequate notice." *Compare McGrahan*, 459 B.R. at 875 ("[A] confirmed chapter 13 plan is not binding as to issues 'not sufficiently evidenced in a plan to provide adequate *protection* to the creditor.'" (emphasis added)), *with Enewally*, 368 F.3d at 1173 ("[T]he confirmed plan has no preclusive effect on issues that . . . were not sufficiently evidenced in a plan to provide adequate *notice* to the creditor." (emphasis added)).  Presumably, based on this misquote, *McGrahan* held that for the debtor's confirmed plan "to have the preclusive effect on DHHS's right to intercept tax refunds . . . it must have *specifically addressed* that right."  459 B.R. at 875 (emphasis added).  However, *Enewally* stands only for the proposition that a creditor be put on sufficient notice of the resolution of its claim in the plan, thereby affording a creditor an opportunity to determine whether to litigate or seek to

---

[4] The parties briefly debate the relevance of *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367 (2010), to the question of the binding effect of Chapter 13 plans. To the extent that *Espinosa* applies to this case, it further solidifies the finality of a confirmed plan.  *See id*. at 269.  Despite *McGrahan*'s suggestion to the contrary, this principle is fairly settled.  8 Collier on Bankruptcy ¶ 1327.02 (15th ed. 2015) ("Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack.").  However, the DOR's rejection of *Espinosa* because of its limited relevance here is well taken; *Espinosa* does not address any issues concerning the post-BAPCPA exception to the automatic stay.

modify its claim.  *See* 368 F.3d at 1173.  To extend *Enewally* any further, as *McGrahan* did, would significantly distort the holding by providing greater protections to creditors than contemplated by the decision. Therefore, because *McGrahan* conflicts with both a plain reading of § 1327(a) and the cases it relies upon, it is of little aid to the DOR.

In sum, while the text of § 326(b)(2)(C) appears to permit DSO collection efforts post-petition, the legislative history lacks any suggestion that Congress intended the exception to abrogate the binding effect of § 1327(a).  Rather, a plain reading of § 1327(a) makes clear that the binding effect of a confirmed plan encompasses all issues that could have been litigated in Gonzalez's case— including whether the DOR could intercept Gonzalez's reimbursement payment. Accordingly, because Gonzalez's plan fell silent on the issue of whether the DOR could intercept Gonzalez's reimbursement payment, the DOR was prohibited from taking such action.

## IV.

The legislative intent behind § 362(b)(2)(C), which permits a DSO creditor to collect notwithstanding the automatic stay, does not indicate that Congress intended the exception to interfere with the binding effect a confirmed plan per § 1327(a).  As such, although the DOR did not violate the automatic stay when it intercepted Gonzalez's reimbursement payment, it did violate the confirmed plan.

16

**AFFIRMED.**