[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11233

_____

D.C. Docket Nos. 8:16-cv-00464-EAK & 8:11-bkc-22258-MGW


In re:   Fundamental Long Term Care, Inc.,

Debtor.

_____

JUANITA JACKSON,
collectively the Probate Estates,
ELVIRA NUNZIATA,
collectively the Probate Estates,
JOSEPH WEBB,
collectively the Probate Estates,
OPAL LEE SASSER,
collectively the Probate Estates,
ARLENE TOWNSEND,
collectively the Probate Estates,
JAMES H. JONES,
collectively the Probate Estates,

Plaintiffs - Appellants,

versus

RUBIN SCHRON,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 15, 2019)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

This case is an appeal of a bankruptcy court's award of costs to the defendant-appellee, Rubin Schron. We find no error by the bankruptcy court in awarding costs, and affirm.

## I.    Background

The parties litigated the underlying bankruptcy case for many years, including a previous appeal to this Court. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325 (11th Cir. 2017), *cert. denied sub nom. Estate of Jackson v. Schron*, No. 18-27, 2018 WL 3306855 (U.S. Oct. 1, 2018). Our opinion in that case recounts the details of this dispute; the basic facts are as follows:

In 2006, the estates of several deceased nursing home patients ("the Estates") filed wrongful death and negligence actions in state court against a nursing home company, Trans Healthcare, Inc, ("THI"), and its related management services company, Trans Health Management, Inc. ("THMI"). In anticipation of what they perceived to be a set of likely adverse judgments, the defendants in that case executed a scheme (the "2006 Transaction") whereby the

2

assets of THMI were transferred to a new entity, Fundamental Long Term Care, Inc. ("FLTCI"), leaving THMI as a shell. THI, for its part, went out of business. In this way, the defendants thought they could avoid the effects of an adverse judgment.

The Estates' suits were successful, but when the Estates figured out that the judgments in their favor were against insolvent shell companies, they filed state court actions on fraudulent transfer theories against various entities, including a real estate investor, Rubin Schron, alleging liability under agency theories in an attempt to tie him to the 2006 Transaction. The Estates also filed an involuntary bankruptcy petition against FLTCI, seeking to void the transfer of assets. The bankruptcy court in that action appointed a trustee.

Concerned that the parallel state and bankruptcy litigation could result in inconsistent outcomes, the bankruptcy court in 2013 enjoined the Estates' pursuit of the state court claims and ordered that all of the Estates' claims against the defendants based on the 2006 Transaction be litigated in an adversary proceeding before the bankruptcy court. The Estates filed a complaint in the bankruptcy court to begin that adversary proceeding. The complaint named numerous entities and individuals as defendants, including Schron.

Schron filed a motion to dismiss for failure to state a claim, insisting that he had nothing to do with the transactions in question and should not be a party in the

3

proceeding. The bankruptcy court agreed, and dismissed Schron from the suit in July of 2014, "concluding that his alleged connection with the transaction was speculative at best." *In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1329. After the Estates entered mediation with the remaining defendants and settled for $24 million, in May of 2016 the bankruptcy court permanently enjoined the Estates from "pursuing claims against Rubin Schron arising out of the nucleus of facts set forth in the adversary complaint in this proceeding." *Id.* at 1334. The Estates then appealed the dismissal of Schron from the bankruptcy case and the injunction preventing them from pursuing the same claims in state court. Both the district court and this Court affirmed. *Estate of Jackson v. Schron*, No. 8:16-CV-22-T-17, 2016 WL 4718145 (M.D. Fla. Sept. 8, 2016), *aff'd sub nom. In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325 (11th Cir. 2017).

Schron filed a Motion to Tax Costs, seeking an order requiring the Estates to pay certain costs he incurred from the litigation. After a hearing on the motion, in February 2016 the bankruptcy court entered an order awarding him $60,162.19 in costs, including deposition and hearing transcripts and related expenses. The Estates appealed to the district court, which affirmed shortly thereafter.

The Estates then appealed the costs award to this Court, which stayed the appeal until the resolution of the appeal on the underlying substantive case. After

4

resolving that appeal and denying a petition for rehearing en banc, this Court lifted the stay in this case regarding costs. The matter is now ripe for review.

## II.    Legal Standard

In bankruptcy cases this Court "sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court" for both factual findings and legal determinations. *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1189 (11th Cir. 2015)); *see also In re Gonzalez*, 832 F.3d 1251, 1253 (11th Cir. 2016), *cert. denied sub nom. Fla. Dep't of Revenue v. Gonzalez*, 137 S. Ct. 2293, 198 L. Ed. 2d 725 (2017).

Federal Rule of Bankruptcy Procedure 7054(b)(1) states that the court "may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Title 28 U.S.C. § 1920 lists what the court may tax as costs, including "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."[1] *Id.* § 1920(2). "This court will not

---

[1] Title 28 U.S.C. § 1920 states in full:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

5

disturb a costs award in the absence of a clear abuse of discretion." *U.S. E.E.O.C.*

*v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (quoting *Tech. Res. Servs. v.*

*Dornier Med. Sys.*, 134 F.3d 1458, 1468 (11th Cir. 1998)).

### III.    Discussion

We review the bankruptcy court's determination of the costs award for abuse

of discretion, and consider each of the Estates' arguments in turn.

### A. Transcripts Not Used in the Dismissal Order

The $60,162.19 in costs awarded by the bankruptcy court included

$58,650.19 in deposition transcript and video costs and $1,512.00 in hearing

transcript costs.  The Estates argue that these deposition and hearing transcript

costs "were not related to Schron's 12(b)(6) motion," and thus not authorized as

"necessarily obtained for use in the case" under § 1920. The Estates insist that

because the bankruptcy court's 12(b)(6) analysis was inherently limited to an

---

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

6

examination of the sufficiency of the operative complaint, the "use" of the transcripts would be impermissible.

Thus the issue is whether costs can be taxed when a transcript is not ultimately used in a dispositive motion. The Estates attribute a narrowness to § 1920 that does not comport with the text of the statute. Section 1920 simply requires that the transcripts be "necessarily obtained for use in the case." There is no requirement in the statutory text that the transcripts must be used later in a proceeding or motion, or that they be cited in the dispositive order.

Our precedent confirms a broader construction of § 1920 than the Estates propose. Although "admission into evidence or use during cross-examination tends to show that [a transcript] was necessarily obtained," "[i]t is not necessary to use a deposition at trial for it to be taxable." *W&O, Inc.*, 213 F.3d at 621.  We have upheld costs for depositions of witnesses whose testimony was "not used . . . at summary judgment or at trial, and [the party] successfully moved *in limine* to have the testimony of all three of these witnesses excluded from trial." *Id.* at 622.  Under such circumstances, the testimony could not have been used in the dispositive proceeding or motion, but it does not matter if "the use of these depositions was minimal or that they were not critical to the [party's] ultimate success." *Id.* at 621. The operative principle is that such costs are taxable when the party opposing the costs "has not demonstrated that any portion of the depositions was not 'related to

7

an issue which was present in the case at the time the deposition was taken.'" *Id.* (quoting *Indep. Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 718 (N.D. Ill. 1982)).

Here, the Estates argue that the depositions and hearings were unrelated to the motion to dismiss but they have not shown that the depositions and hearings were unrelated to an issue in the case at the time they occurred.[2] The bankruptcy court did not abuse its discretion on this basis by awarding costs for transcripts that were not used in the motion to dismiss.

### B. Non-Adversary Proceeding Transcripts

The Estates also argue that the bankruptcy court's award of $15,500.53 for transcripts from other actions (the state court actions and the Rule 2004 bankruptcy investigation that preceded the adversary proceeding) which are distinct from the adversary proceeding was an abuse of discretion because these transcripts were not necessary for use in this case.

We reiterate that § 1920 requires only that a transcript's cost be "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Nothing in § 1920 requires that

---

[2] We note that with respect to depositions which were noticed by the Estates, there is an additional factor in favor of taxing costs. "Taxation of deposition costs of witnesses on the losing party's witness list is reasonable because the listing of those witnesses indicated both that the plaintiff might need the deposition transcripts to cross-examine the witnesses, and that "'the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery.'" *W&O, Inc.*, 213 F.3d at 621 (quoting *Independence Tube Corp.*, 543 F. Supp. at 717) (internal citation omitted)).

the deposition be taken as part of discovery in the same case in which a party requests taxation of costs. It requires only that the transcripts be "for *use* in the case." § 1920(2) (emphasis added). The statute makes no distinction based on whether or not the transcripts bear the same case number as the action in which the costs are sought.

The Estates have cited no cases from this Circuit that categorically exclude transcript costs merely by virtue of being an element of discovery in a separate action. In fact, as the Estates admit, a "Rule 2004 examination is a bankruptcy investigative tool that parties in interest use *prior* to the filing of an adversary proceeding." It would be odd to declare that the fruits of that "investigative tool" are not necessary for use in the subsequent adversarial proceeding.

With respect to the two state court transcripts challenged by the Estates, this Court previously found that the state court claims were "substantially similar, if not identical, to the claims" in the adversary proceeding. *In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1340.  This Court has already noted the relationship of the state court discovery to the bankruptcy proceeding: "Plaintiffs had enjoyed the opportunity for extensive discovery in state-court proceedings by the time of the Second Amended Complaint." *Id.*, 873 F.3d at 1342. In fact, one of the state court deposition transcripts in question is of a deposition of Schron himself. It was therefore reasonable to believe that the transcripts from the related state court cases

9

would be used against Schron in the adversary proceeding. The fact that the transcripts had their geneses in technically separate legal actions is irrelevant to the dispositive issue: whether they were necessarily obtained for use in this case.

As the district court correctly concluded, the Estates' argument "overlooks the realities of litigation," in particular the realities of the litigation in this dispute. Here, given the timeline of events and the particular transcripts obtained, the bankruptcy court did not abuse its discretion in awarding costs related to these transcripts. The depositions that took place before the adversary proceeding were, as the district court correctly pointed out, the "basis" for the claims in the adversary proceeding. Accordingly, the bankruptcy court did not abuse its discretion by awarding costs for the transcripts from separate but closely related actions involving the same underlying dispute.

## C. Pretrial Hearing Transcripts

The protracted litigation in the underlying case on the merits resulted in an extensive number of hearings in the bankruptcy court, and Schron requested transcripts of some of those proceedings. The bankruptcy court included the costs of those transcripts, but the Estates argue that $1,512.00 in pretrial hearing transcript costs are not recoverable under § 1920.

First, the Estates assert that Schron failed to show that the hearing transcripts "limited or clarified issues" which were to be heard at trial and that Schron could

10

have simply reviewed the pleadings and orders surrounding the hearings. Section 1920 includes the costs of "printed or electronically recorded transcripts necessarily obtained for use in the case," and we see no reason why that language does not include transcripts of pretrial hearings. *See, e.g.*, *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 781–82 (Fed. Cir. 1983). Contrary to the Estates' argument, pleadings and orders surrounding hearings may not be enough to complete the litigation picture without transcripts of the hearings themselves. This case provides an illustrative example. The bankruptcy court held a hearing during which it discussed its findings regarding the taxation of costs; its order on the matter simply referenced the hearing. In such circumstances, merely reading the briefs and order does not offer insight into the court's reasoning. We will not categorically remove a hearing transcript from the scope of § 1920 simply because the hearing had associated briefing and orders.

Second, the Estates point to certain transcripts of hearings that took place after the bankruptcy court dismissed the claims against Schron from the case, arguing that it was not within the bankruptcy court's discretion to award the costs of those transcripts. The question thus is whether the timing of some of the hearings makes the cost of their transcripts unrecoverable under § 1920.

This Court has previously described Schron's continued involvement in the litigation following his dismissal as follows:

11

Having earlier been dismissed from the adversary proceeding at the pleading stage, Schron was the sole non-settling Defendant. Throughout the adversary proceeding, the Estates had maintained their intention to pursue further state actions against Schron notwithstanding his early dismissal from the case. Schron recognized the possibility of future action against him in a different venue and accordingly opposed the various settlements unless they were accompanied by a permanent injunction preventing the Estates from reviving or bringing any new state-court judgment-enforcement actions against him. Thus, Schron's insistence on a permanent injunction reflected his legitimate fear that Plaintiffs would try to upend the resolution reached by the bankruptcy court after much litigation by the parties.

*In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1334. Additionally, the Estates appealed the bankruptcy court's dismissal of Schron to the district court as well as to this Court. The ongoing litigation and appeals, and the subsequent need for Schron to maintain participation in the dispute, justified the costs for transcripts of the hearings in question. Under such circumstances, it was reasonable for Schron to request transcripts. *In re Fundamental Long Term Care, Inc.*, 569 B.R. 904 (Bankr. M.D. Fla. 2016) (detailing the continued assertion of claims by the Estates against Schron).

Accordingly, we find the bankruptcy court did not abuse its discretion by taxing costs for the pretrial hearing transcripts.

12

### D. Extraneous Costs

The Estates argue that $15,092.06[3] awarded for "extraneous costs" such as "charges for video streaming, E-CD litigation packages, conference call/telecom appearances, expedited transcripts, ASC-II rough drafts, technology surcharges, and postage/shipping/handling/processing," are not authorized by 28 U.S.C. § 1920. The Estates never singled out these "extraneous" costs to the bankruptcy court, but they insist this new argument is encompassed in their broader argument: the claimed costs were not necessary to the adversary proceeding.

The Estates argue that regardless of the necessity to the case, these types of costs are not authorized by § 1920. However, by not advancing this argument in the bankruptcy court proceeding, the Estates have waived it, and this Court does not have to reach the substantive question of whether the bankruptcy court abused its discretion. "We have declined to address issues not raised before the bankruptcy court because an alternate course would 'delay the disposition of bankruptcy cases' and permit a party . . . to 'say nothing to the bankruptcy court, await its ruling, bypass that judgment, and for the first time take that objection to the district court.'" *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1300 (11th Cir. 2003) (quoting *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1208 (11th Cir. 1989).

---

[3] In their opening brief, the Estates listed the figure of "extraneous" costs as $15,750.10, but changed it to $15,092.06 in their reply brief. Neither figure was presented to the bankruptcy court.

13

Without being presented with argument contesting these costs, the bankruptcy court could not have erred by including these ancillary costs in its award.[4]

### E. Equitable Considerations

The Estates also raise concerns based in equity. They do not claim that the costs awarded are exorbitant; rather they point to alleged discovery of malfeasance by the other side's attorneys. Their argument, however, does not explain how the alleged malfeasance is related to the costs; instead, they simply insist that the bankruptcy court "failed to consider the unfair nature of the proceedings below" when it entered judgment in Schron's favor and taxed costs.

The Estates are essentially asking us to hold that the "unfair" nature of the bankruptcy court's dismissal of their case with respect to Schron demands a different outcome with respect to costs. The Estates failed to bring this argument at the bankruptcy court below, and so this Court need not address it. *See Denis*, 791 F.2d at 848–49. But even if we were so inclined, this Court found nothing "unfair" about the bankruptcy court's dismissal of the claims against Schron with prejudice

---

[4] We note that even if we were to reach the merits of this issue, the types of expenses in question are not categorically outside the bounds of the statute. *See, e.g., Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002) ("Although we do not believe that the costs associated with expedited trial transcripts should be allowed as a matter of course, lest litigation costs be unnecessarily increased, the district court found that expedited transcripts were necessary in this case given its length and complexity . . . . [W]e cannot say that the district court clearly abused its discretion by reaching this conclusion."). The fact-intensive analysis required to parse which ancillary expenses should be included in an award of costs is far better left to the bankruptcy court—and is all the more reason why the Estates should have presented their argument regarding these costs to the bankruptcy court in the first instance.

when we affirmed that decision just last year. *In re Fundamental Long Term Care, Inc.*, 873 F.3d at 1347–48. Under such circumstances, the equitable considerations in this case do not favor the Estates.

For the foregoing reasons, we affirm the award of costs in its entirety.

**AFFIRMED.**